2009 Ark. App. 684

**James Edward WILLIAMS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–1453.**

Court of Appeals of Arkansas.

Oct. 21, 2009.

James Edward Williams, pro se.

William R. Simpson, Jr., Public Defender, Timothy A. Boozer, Deputy Public Defender, by: Clint Miller, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Lauren Elizabeth Heil, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge.

⌊₁Appellant James Edward Williams was convicted by a jury of two counts of aggravated robbery, two counts of first-degree terroristic threatening, theft of property, and third-degree battery. Mr. Williams

was sentenced to a total of thirty years in prison. In this appeal, Mr. Williams' sole argument is that the trial court erred in permitting him to represent himself at trial because his waiver of his constitutional right to counsel was not a knowing and intelligent waiver. We affirm.

At the jury trial the two victims in this case, Louis Dudderar and Grace Dudderar, testified about the crimes carried out by Mr. Williams while they were working at their Coin and Stamp Shop on the afternoon of July 10, 2007. On that day, Mr. Williams entered the store armed with a pistol and demanded money. It was a toy pistol, but the victims believed $|_2$it to be real and during the episode Mr. Williams threatened to kill both of them. At some point a struggle ensued between Mr. Williams and Mr. Dudderar, and during the altercation Mr. Dudderar suffered injuries. Mr. Williams fled the store with a large sum of cash, but was soon apprehended by the police and arrested. Mr. Williams elected to testify in his defense, and he admitted his involvement but stated that the robbery was staged pursuant to a conspiracy among the victims and himself.

Mr. Williams made his initial request to represent himself at a pretrial hearing held on February 14, 2008. A public defender had been appointed to represent him, but Mr. Williams advised the trial court that he wished to proceed as his own counsel with the public defender as standby counsel. Upon hearing appellant's request, the trial court stated:

Well, let me just say this. I've been in this system for a long time. You're charged with two counts of aggravated robbery, which carry up to life imprisonment, and those are too serious of charges for you to represent yourself. If you did that, you'd put yourself in jeopardy in front of a jury, and it's kind [of] my job to be the gatekeeper in here, and if I see someone who's going to put themselves in that position, I ought to stop it. So I'm going to let [defense counsel] make the calls, okay?

Mr. Williams continued to urge the trial court to let him represent himself, and the trial court indicated that it would not grant the request at that time but would take it up at the next scheduled pretrial hearing. The trial court strongly cautioned against self-representation, stating, "The only two times I've seen that happen, a fellow got life for rape, and the other time it was on an aggravated robbery, and I was the prosecutor, and he talked to the jury, $|_3$and they gave him three life sentences. . . . But I don't want to let you do this on your own because it's just inviting disaster."

The next pretrial hearing was held on April 10, 2008. At the outset of the hearing, appellant's counsel announced that he had spoken at length with Mr. Williams and went over the dangers of what he was facing given his long criminal history and status as a habitual offender, and that Mr. Williams still wanted to represent himself. Defense counsel indicated that Mr. Williams had attended one or two years of college in the 1970s, and had been involved with the criminal justice system for forty years. Appellant's counsel gave the opinion that Mr. Williams' waiver of counsel was being made intelligently.

During the April 10, 2008, hearing, there was a lengthy colloquy between Mr. Williams and the trial court. Mr. Williams indicated that he had been the defendant in one jury trial in 1975, and the trial court asked whether he understood that there is a big difference between watching a trial and trying it yourself. Mr. Williams acknowledged that he did. The discussion continued as follows:

TRIAL COURT: You understand that if you represent yourself, that you're going

to be under the same restrictions and obligations as a lawyer would be.

MR. WILLIAMS: Yes sir.

TRIAL COURT: You understand that?

MR. WILLIAMS: Yes, sir, Your Honor, I respect my brother defendant, but, see, I've been in a commode just about all my life, and I don't think he understand what goes on down there. I would not embarrass the court, nor will I embarrass myself. But there's some things that needs to be said as far as my perspective is concerned, and I don't think the public defender understands at this particular point. And I will not abuse this court if you will allow me to do that.

TRIAL COURT: Well, I'm not worried about you abusing the court because I'm not going to let you because I'll treat you with the same standard that I would a lawyer. So if you ask a question that's out of line or say something that's out of line, I'll stop it.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: But that's not the problem. The problem is is that you have a right to counsel and a right to representation in front of a jury. And by you taking on that yourself, you're going to put yourself at a very severe disadvantage.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: In fact, I've seen this happen before, and I've never seen it work out right. It usually ends up in a disaster, and then the supreme court is going to turn around and tell me that I did wrong in letting you do this if I let you do it. And they're going to say that you didn't know what you were doing, that I didn't explain this process to you; they're going to say that I didn't explain that you have a right to cross-examine witnesses. And without the skill to cross-examine witnesses, that you may not necessarily do it in the correct way. They're going to say that you don't understand the nuances of the charges, of the jury instructions, of how to structure a defense to the jury, of how to argue that defense to the jury. And, they're going to say that that's my fault if I let you do this. But you're telling me that you want to do it in spite of that.

MR. WILLIAMS: That's right.

TRIAL COURT: In spite of it being a disaster, a possible disaster.

MR. WILLIAMS: Yes, sir, I do.

TRIAL COURT: So what are you going to tell the supreme court if you get a life sentence and you're going to come back and say, "Well, that judge was pretty stupid in letting me try this case myself?"

MR. WILLIAMS: No, sir. What I would like to do, if it's okay with the court, I would like to waive all rights to anything that happened at trial because anything I get is going to be a life sentence for me. I'm fifty-eight years old. I've got diabetes; I've got high blood pressure. So whatever it is that I get [would] be a life sentence for me. I believe I can win this case. All I need to do is just get up and tell the truth. There's some things here in this particular case—

TRIAL COURT: Well, you know, by telling the truth that means you'd testify.

MR. WILLIAMS: Yes, sir. I have no problem with that.

TRIAL COURT: And that will open up your criminal record.

MR. WILLIAMS: Yes, sir. That was my plan in the first place.

TRIAL COURT: And by counsel representing you that he may not necessarily agree that that's the smartest thing to do.

362

MR. WILLIAMS: I've already been told that, your honor. I accept that responsibility.

TRIAL COURT: So, you understand that if you testify that you're subject to cross-examination about your prior felony convictions.

MR. WILLIAMS: Your honor, I cannot put on my defense without taking the stand myself. I understand that, believe me. And I also understand that just the fairness of it yourself could influence anybody. Well, see, that's just the surface. If you look at the surface, then I'm already convicted. But it's my understanding that I have an opportunity to explain what this loaf of bread is made out of as opposed to us going in the store and buying it. And that's what I want to do.

DEFENSE COUNSEL: That's an analogy he draws, your honor. Getting down to the basics, just one other matter that needs to be addressed for sure under the supreme court decision. They do make it plain that a defendant who elects to represent himself cannot thereafter complain about the quality of his own defense amounting to denial [of effective] assistance of counsel. That has to be made plain that that claim is gone once you've chosen this route.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: You understand that?

MR. WILLIAMS: Yes, sir, I read it in the book. I accept that.

TRIAL COURT: You're charged with aggravated robbery. Is he also charged as a habitual?

DEFENSE COUNSEL: Large habitual, your honor.

TRIAL COURT: So, what's the range if he's convicted?

DEFENSE COUNSEL: Ten to life per count.

TRIAL COURT: How many counts do we have?

DEFENSE COUNSEL: Two.

DEPUTY PROSECUTING ATTORNEY: There's one incident, two different victims.

TRIAL COURT: So you understand that except for murdering somebody, that's about as severe [a] penalty as you can get out of a jury.

MR. WILLIAMS: Like I said, your honor, anything I get is severe because of my record. And I'm willing to put that on the line in order to get my defense in front to a jury. I think I can do it a little better under the circumstances than a lawyer. That's not to take anything from [defense counsel]. But my lawyer hadn't been in the streets like I've been in the streets. And, believe me, I am not going to get up here and act no fool and go through any changes. It's just some simple things I'd like to present [what] I believe will make me successful under the circumstances.

TRIAL COURT: I'm not worried about you acting like a fool because I'm going to stop that.

MR. WILLIAMS: Oh, I understand that.

TRIAL COURT: But what I'm worried about is you presenting a case to the jury and taking the stand when you're subject to cross-examination about your prior record.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: Your credibility would be severely impaired by that act, and your lawyer can take that into consideration in making a recommendation on how to proceed with this trial.

MR. WILLIAMS: Yes, sir. I intend to listen to everything he has to say. But, I still would love to do it myself.

The public defender indicated that Mr. Williams wanted him to act as standby

counsel for technical assistance, and Mr. Williams agreed with that. Then the deputy prosecutor expressed concern that Mr. Williams might want to put information before the jury that was not relevant, and wanted to make sure that Mr. Williams understood that he was to abide by the same rules of evidence that counsel would. Upon inquiry by the trial court, Mr. Williams said that he understood. Then there was the following exchange:

TRIAL COURT: Okay. Well, I'm going to let you do that. I think it's a mistake, and I would advise you against doing that. And, if I were in your shoes, I wouldn't do that because I've seen it happen in this courthouse for the last thirty years, and it never works well. In fact, I've never seen it work.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: But if you want to take that risk, it's your life.

MR. WILLIAMS: I do.

The trial court announced that it would let Mr. Williams represent himself with defense counsel sitting in second chair.

On the day of the jury trial, the trial court again advised Mr. Williams against self-representation and gave him the opportunity to change his mind. They had the following discussion:

TRIAL COURT: Mr. Williams, you're charged with two counts of aggravated robbery. They each carry ten to life.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: The theft of property with the habitual allegation in this case carries up to 30 years. The terroristic threatening up to 15. There's two counts of those, and there's one misdemeanor. And you're charged with a large hab having four or more prior felonies. You understand what the charges are?

MR. WILLIAMS: Yes, Your Honor.

TRIAL COURT: And, what the range is?

MR. WILLIAMS: Yes, Your Honor.

TRIAL COURT: And before we talked about you representing yourself.

MR. WILLIAMS: Yes, Your Honor.

TRIAL COURT: With [defense counsel's] assistance?

MR. WILLIAMS: Yes, sir.

TRIAL COURT: And, I think I told you I didn't think that was a very good idea, but you insisted on it. You understand that, and I'm going to give you another chance to change your mind, but you understand that you're going to be held to the same standards that a lawyer would be held to if you [try] the case.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: If you ask a question that's objectionable, [and] if the prosecutor objects and it's sustainable, it will be sustained, and it could be difficult. You understand that?

MR. WILLIAMS: Yes, sir.

TRIAL COURT: You understand the perils of representing yourself in a trial like this.

MR. WILLIAMS: According to the book, it says the guy that represents himself has a fool for a client.

TRIAL COURT: Well, and that's a pretty good rule. And even I've seen attorneys represent themselves, and [they] have been in trouble doing that.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: So you understand all of that.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: And you still want to go ahead and do this.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: Well, we're going to let you, but I'm advising you heavily against it. You've got a good lawyer; you've got a couple of good lawyers.

MR. WILLIAMS: Yes, sir.

TRIAL COURT: All right.

DEFENSE COUNSEL: And, just for the record, he does understand that he gives up Rule 37 when he's representing himself.

TRIAL COURT: Right. And you also understand that you can't testify . . . through questions, but if you do take the stand and you make that decision, that the State can inquire as to your prior felony convictions. You understand that?

MR. WILLIAMS: Yes, sir.

TRIAL COURT: Okay, okay.

DEFENSE COUNSEL: And we did tell you that you couldn't testify through questions, that you had to ask actual questions.

MR. WILLIAMS: Right, exactly.

TRIAL COURT: All right.

Mr. Williams proceeded to represent himself at the jury trial, with standby counsel, resulting in his convictions and thirty-year prison sentence.

Mr. Williams now argues on appeal that his convictions should be reversed and remanded because the trial court erred in permitting him to represent himself and he was denied his Sixth Amendment constitutional right to assistance of counsel. Mr. Williams contends that he suffered this deprivation because his waiver of counsel was not knowing and intelligent, and therefore it was invalid. Mr. Williams specifically asserts that the trial court failed to make him aware of the dangers and disadvantages of representing himself because the trial court did not sufficiently question him about his understanding of the rules of court procedure and rules of evidence and then explain to him the disadvantages he would suffer from his lack of such knowledge.

The Sixth Amendment to the United States Constitution, made obligatory upon the states by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Pierce v. State,* 362 Ark. 491, 209 S.W.3d 364 (2005). Article 2, section 10, of the Arkansas Constitution provides that an accused in a criminal prosecution has the right to be heard by himself and his counsel. *Id.* It is also well established that an accused has a constitutional right to represent himself and make a voluntary, knowing, and intelligent waiver of his constitutional right to assistance of counsel in his defense. *Bledsoe v. State,* 337 Ark. 403, 989 S.W.2d 510 (1999).

In Arkansas, we have long recognized the crucial aspect of informing an accused of his right to represent himself, along with the attendant risks. *Hatfield v. State,* 346 Ark. 319, 57 S.W.3d 696 (2001). A defendant may proceed pro se in a criminal case when: (1) the request to waive the right to counsel is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver of the right to counsel; and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Mayo v. State,* 336 Ark. 275, 984 S.W.2d 801 (1999).

Our supreme court has held that the trial court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *Pierce v. State, supra.* Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, experience, and conduct of the accused. *Id.* Every reasonable presumption must be indulged against the waiver of fundamental constitutional

rights. *Id.* A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. *Id.* The burden is upon the State to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel. *Oliver v. State,* 323 Ark. 743, 918 S.W.2d 690 (1996).

The constitutional minimum for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forego the aid of counsel. *Parker v. State,* 93 Ark. App. 472, 220 S.W.3d 238 (2005). Our standard of review is whether the trial court's finding that the waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence. *Id.* On the particular facts and circumstances of the instant case, we hold that the trial court conducted a sufficient inquiry, specifically warning Mr. Williams of the dangers of self-representation, and that its finding that his waiver was knowing and intelligent was not clearly against the preponderance of the evidence.

In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that, although a defendant need not have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes wide open. In *Faretta,* the Court also concluded that a defendant's technical knowledge, as such, is not relevant to an assessment of his knowing exercise of the right to defend himself.

In the case at bar, Mr. Williams made unequivocal requests to waive his right to counsel and represent himself at both pretrial hearings and the trial itself. The trial court explained to Mr. Williams that he had a right to counsel, and repeatedly advised against self-representation,[11] stating that this would result in a "very severe disadvantage" and would be a "possible disaster." The trial court specifically advised Mr. Williams that he would be held to the same restrictions and obligations as a lawyer; that he would be subject to the rules of evidence, meaning that objections by the prosecutor might be sustained; that he would not be permitted to testify through his examination of the witnesses; and that if he elected to testify he would be subject to cross-examination about his criminal record. The trial court also made reference to appellant's lack of skill to cross-examine witnesses, and lack of understanding of the nuances of the charges, jury instructions, and how to structure a defense. The trial court informed Mr. Williams of the seriousness of the charges and possibility of a life sentence, and despite all of these warnings Mr. Williams still insisted that he wished to represent himself. This record demonstrates that Mr. Williams was made aware of the dangers and disadvantages of self-representation, and that he knew what he was doing and chose to represent himself with eyes wide open. Under such circumstances, we cannot agree with Mr. Williams' assertion that the trial court erred in permitting his self-representation or that there was any constitutional deprivation of his right to counsel.

Affirmed.

MARSHALL and BAKER, JJ., agree.