2012 Ark. App. 314

**Dale Harvey BROWN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–535.**

Court of Appeals of Arkansas.

May 2, 2012.

Sharon Kiel, Little Rock, for Appellant.

Dustin McDaniel, Atty. Gen., Brad Newman, Asst. Atty. Gen., for Appellee.

DOUG MARTIN, Judge.

A Van Buren County jury convicted appellant Dale Harvey Brown of the manufacture of marijuana, possession of marijuana with intent to deliver, possession of drug paraphernalia, and simultaneous possession of drugs and firearms. Brown was sentenced to an aggregate total of sixteen years' imprisonment and fined $30,000. Brown does not challenge the sufficiency of the evidence supporting his convictions. Rather, Brown argues that the trial court erred in allowing him to represent himself without having made a knowing and intelligent waiver of his right to counsel. We agree and, accordingly, reverse and remand.

The Sixth Amendment to the United States Constitution, made obligatory upon the states by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Oliver v. State*, 323 Ark. 743, 749, 918 S.W.2d 690, 693 (1996). The constitutional right to counsel, however, is a personal right and may be waived. *Mayo v. State*, 336 Ark. 275, 984 S.W.2d 801 (1999). The Arkansas Supreme Court has held that the trial court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *Gibson v. State*, 298 Ark. 43, 764 S.W.2d 617 (1989). The determination of whether any defendant intelligently waived his right to counsel is dependent upon the particular facts and circumstances of the case, including the background, the experience, and the conduct of the accused. *Mayo, supra.*

The accused must have full knowledge or adequate warning concerning his rights and a clear intent to relinquish them before a waiver can be found. *Id.* Significantly, every reasonable presumption must be indulged *against* the waiver of the fundamental constitutional right to counsel. *See, e.g., Oliver, supra* (emphasis added). In determining whether a defendant knowingly and intelligently waived his constitutional right to counsel, our standard of review is whether the trial court's finding was clearly against the preponderance of the evidence. *Williams v. State*, 2009 Ark. App. 684, 372 S.W.3d 358.

There are three requirements that must be met before allowing a defendant to proceed pro se: (1) the request to waive

the right to counsel must be unequivocal and timely asserted, (2) there must have been a knowing and intelligent waiver, and (3) the defendant must not have engaged· in conduct that would prevent the fair and orderly exposition of the issues. *Mayo, supra.* In *Pierce v. State,* 362 Ark. 491, 209 S.W.3d 364 (2005), our supreme court wrote, "We note that these three requirements are in the conjunctive by the use of the word, 'and.' That is, all three factors must be satisfied in order to proceed pro se." *Id.* at 504, 209 S.W.3d at 371. The first two requirements were not met in this case.

### I. Brown Was Equivocal With Regard to Proceeding Pro Se

■ Brown's actions do not demonstrate that any waiver of his right to counsel was unequivocal given that Brown, over the course of approximately a year, continually considered hiring private counsel to represent him. Brown's arraignment was held on November 10, 2008, at which time the trial judge asked Brown whether he had submitted an affidavit of financial means, to which Brown responded that he was offered a public defender but "preferred to go pro se." Yet, on January 6, 2009, Brown was asked by the trial judge whether he had made any efforts to contact an attorney, and Brown said, "Yes, but I'm waiting on my ex-wife to send me some addresses of attorneys. I have written to several. I've written to the ACLU. I've written to Attorneys for Public Justice, and I've written to NORML, and not received any feedback at all about this." On June 2, 2009, the trial judge asserted that Brown was still acting pro se and had not retained counsel, to which Brown said, "Yes, I'm trying to track down an old friend who since became a lawyer, but I haven't been able to get him yet." At another pretrial hearing on October 6, 2009, Brown was asked by the trial judge

whether he had spoken with anyone about representing him, and Brown said, "Yes, I have, but I've ·not been satisfied with my conversations." The equivocal nature of these statements by Brown vitiate against the trial court's conclusion that Brown waived his constitutional right to counsel.

### II. Any Waiver By Brown Was Not Knowing And Intelligent

■ At his arraignment, Brown informed the trial court that he had visited the law library; he has a bachelor's degree in psychology and did post-graduate work in computer science; and he had a computer, printer, and access to an online law library. Brown had no criminal history, however, and was essentially a newcomer to the criminal justice system. A few months before Brown's trial began, the prosecutor informed the court that Brown's estranged wife and codefendant had provided information suggesting that Brown had mental health problems, and an "Act 3 evaluation" was conducted, which indicated that Brown was competent to stand trial.

Any waiver by Brown was not knowing and intelligent for two reasons. First, although there were thirteen pretrial hearings, the trial judge never explicitly informed Brown that he had an absolute right to counsel. Second, the trial judge did not adequately warn Brown of the risks and disadvantages of self-representation before permitting Brown to proceed pro se.

In *Bledsoe v. State,* 337 Ark. 403, 989 S.W.2d 510 (1999), our supreme court noted that, "Mr. Bledsoe was not informed *explicitly* of his constitutional right to an attorney, nor was any inquiry made as to his ability to afford an attorney." *Bledsoe,* 337 Ark. at 409, 989 S.W.2d at 513–14 (emphasis added). Likewise, Brown was

never informed explicitly of his constitutional right to counsel. After being informed by Brown that he had been offered a public defender but preferred to proceed pro se, the trial judge spoke of Brown's self-representation as though it were a foregone conclusion. Based on our review, however, it appears that the trial judge simply overlooked the basic premise that Brown had a constitutional right to counsel. The trial judge never directly and concisely advised Brown that he had a right to counsel, yet the trial judge concluded that Brown had waived his constitutional right to counsel. Without an explicit statement by the trial judge telling Brown of his right to counsel, we are unable to conclude that Brown knowingly and intelligently waived such right, as we are precluded from presuming the waiver of a constitutional right.

The trial judge made a brief inquiry regarding Brown's finances in that the trial judge asked Brown whether he owned property and was employed. Brown's answer to both questions was essentially "no," and Brown mentioned that he was on Social Security, drawing benefits of $679 per month, and that he did not have any "cash assets." Even after learning that Brown had limited financial means, the trial judge did not follow up by informing Brown that he had a constitutional right to the assistance of a public defender free of charge. Following Brown's assertion that he had no money, the trial judge said:

> Well, that's why the Court was going to consider appointing a public defender to assist you in this matter. And, I would just remind [you], sir, that you could probably take out your own appendix. You might not survive the surgery though, and that's why God made lawyers—to help people who have legal problems.... But, if you're going to represent yourself pro se and you seem

to have the academic background to do that ... I'll certainly let you.

Instead of explicitly informing Brown that he had a right to counsel, the trial judge said that he would "consider appointing" a public defender; that his inclination was to ask a public defender to sit second chair; that he would request that the public defender's office have someone available; and that he "asked Mr. Jackson to assist you in this matter." None of these statements by the trial judge explicitly conveyed to Brown that he had a constitutional right to counsel.

While the trial judge correctly informed Brown that he had the right to represent himself, the trial judge never expressly told Brown that he had a constitutional right to counsel. On September 17, 2010, the first day of Brown's trial, the trial judge said, "Mr. Brown, we have talked several times about your right to represent yourself and your efforts in doing that, and I told you that you have a right to do that, and I have concluded based on our discussions that you do not lack the—any sort of mental impairment that would inhibit your ability to do that...." Brown's mental acuity, however, was not the only consideration in determining whether Brown intended to waive his constitutional right to counsel. We cannot assume that Brown was aware of his right to counsel simply because Brown is educated and had access to an online law library. Again, all reasonable presumptions must be made *against* the waiver of Brown's constitutional right to counsel. *See Oliver, supra.*

In order to effectively waive the right to counsel, not only must the accused be informed that he has the right to counsel, the accused "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faret-*

*ta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citing *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). In *Bledsoe, supra,* although the judge informed Bledsoe that he must follow the rules of the court, Bledsoe was "given no explanation as to the consequences of failing to comply with those rules, such as the inability to secure the admission or exclusion of evidence, or the failure to preserve arguments for appeal." *Bledsoe,* 337 Ark. at 409, 989 S.W.2d at 513.

In this case, the trial judge warned Brown several times of the range of potential sentences he faced if found guilty. The trial judge explained the order of the proceedings to Brown. Also, the trial judge informed Brown that he would be held to the same standards as an attorney and that he had to comply with the court's rules. The trial judge, however, issued warnings to Brown that were less than clear. For example, the trial judge told Brown, "If you made an objection or if you failed to make an objection, that your situation could be adversely affected by your knowledge." Also, the trial judge warned Brown that he was "in jeopardy of not knowing some things you may need very much to know." Finally, the trial judge gave Brown the following advice: "[Y]ou have to understand in representing yourself if you present yourself to the jury and make statements to them about your participation, your involvement, your set of circumstances, that they may consider all of those things as your participation in the case as you participate in the case." While these statements served as generic cautions and vague advice, we are unable to conclude that the trial court specifically warned Brown of the consequences and potential pitfalls of representing himself.

The trial judge failed to recognize that Brown was equivocal with regard to pro-

ceeding pro se, failed to explicitly advise Brown that he had a constitutional right to counsel, and failed to adequately warn Brown of the dangers and disadvantages of self-representation. Given that we must indulge every reasonable presumption *against* the waiver of fundamental constitutional rights, *Oliver, supra,* we hold that the trial court's conclusion that Brown waived his right to counsel was clearly against the preponderance of the evidence.

### III. *The Participation of Standby Counsel Was Not Substantial*

The assistance of standby counsel can rise to a level where the defendant is deemed to have had counsel for his defense, thereby mooting any assertion of involuntary waiver. *Hatfield v. State,* 346 Ark. 319, 57 S.W.3d 696 (2001). Whether or not such assistance rises to that level is a question that must be answered by looking at the totality of the circumstances. *Id.* Our cases on this issue demonstrate that the assistance must be substantial, such that counsel was effectively conducting a defense. *Id.*

The public defender appointed to act as standby counsel for Brown first attended a hearing on October 6, 2009. The suppression hearing was thereafter held on January 11, 2010, at which Brown submitted a document that was treated as a motion to suppress the marijuana evidence, although the trial judge acknowledged that the document contained "a great deal of [Brown's] opinion regarding the current state of the law." There was no motion to suppress Brown's incriminating statements made during an interview with police without the presence of counsel, and Brown's incriminating statements were thus admitted at trial without objection. Brown cross-examined the State's witnesses. The public defender's entire contribution at the sup-

pression hearing was: "[Brown]'s not inquired anything, Your Honor."

Further, Brown's standby counsel offered minimal participation at trial. Brown conducted his own voir dire, and counsel did not ask any questions of the jurors. Brown prepared a document that he tendered as his opening statement and gave a verbal statement before the jury as well. Counsel did not raise any objections during the trial, but he moved to dismiss two of the four charges against Brown. Brown made his own closing argument.

We note that the State acknowledged in its brief that standby counsel's role at trial was negligible and that the State would not argue otherwise. Viewing the totality of the circumstances, we cannot say that the participation by Brown's standby counsel was substantial, such that counsel was effectively conducting a defense. Therefore, the involuntary waiver by Brown was not rendered moot by standby counsel's limited assistance in this case.

For all of the reasons set forth in this opinion and, in light of the presumption against waiver of an accused's fundamental constitutional right to counsel, we reverse and remand.

Reversed and remanded.

VAUGHT, C.J., and ROBBINS and ABRAMSON, JJ., agree.

HART and GRUBER, JJ., dissent.

GRUBER, J., dissenting.

Our mothers warned us to be careful what we wish for because we just might get it. This appears to be true for Mr. Brown; he wanted to "go pro se" before a jury to make his "test case" on medical marijuana, and the trial judge allowed it.

Brown now argues that he did not knowingly and intelligently waive his right to counsel, as is required by *Mayo v. State,*

336 Ark. 275, 984 S.W.2d 801 (1999). He asserts that the trial court failed to adequately warn him of the risks and consequences of representing himself. I would hold that he was adequately warned and that his request to waive counsel was knowingly and intelligently made.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee that any person brought to trial in state or federal court must be afforded the fundamental right to assistance of counsel, but it is also well established that the accused has a constitutional right to represent himself and make a voluntary, knowing, and intelligent waiver of the constitutional right to the assistance of counsel. *Oliver v. State,* 323 Ark. 743, 918 S.W.2d 690 (1996) (citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). In determining if there is a voluntary and intelligent waiver of the right to counsel, the proper inquiry for the trial court is whether appellant was made aware of the dangers of self-representation. *Pierce v. State,* 362 Ark. 491, 209 S.W.3d 364 (2005) (citing *Faretta, supra,* and *Bledsoe v. State,* 337 Ark. 403, 989 S.W.2d 510 (1999)). The constitutional minimum for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forego the aid of counsel. *Williams v. State,* 2009 Ark. App. 684, at 9–10, 372 S.W.3d 358, 365.

Notably, the Supreme Court has declined to prescribe any particular script for the trial court to follow in order to satisfy the *Faretta* inquiry requirement. *Iowa v. Tovar,* 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004). Rather, the information a defendant must possess in order to intelligently waive the right to counsel "will depend on a range of case-specific

factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* A record must establish that the defendant "knows what he is doing and his choice is made with eyes open," *Pierce,* 362 Ark. at 504, 209 S.W.3d at 372 (citing *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525), but our statutes and court rules do not specify what the trial court must do to confirm that a waiver is valid and to protect the defendant's right to counsel. *See Parker v. State,* 93 Ark. App. 472, 220 S.W.3d 238 (2005) (Baker, J., concurring) (detailing the specific warnings a trial court should give a criminal defendant seeking to waive the right to counsel).

In *Bledsoe v. State,* 337 Ark. 403, 989 S.W.2d 510 (1999), the private attorney withdrew from the case, the trial court appointed a public defender, and Bledsoe announced on the day of trial that he wished to represent himself. The court told Bledsoe that he would be required to follow all rules and procedures of the court, which likely would be difficult given his lack of formal legal education, and advised him that the public defender could handle the entire trial if he so desired. Bledsoe was given no explanation of the consequences of failing to comply with those rules, such as an inability to secure the admission or exclusion of evidence, or a failure to preserve arguments for appeal. There was neither discussion about the substantive risks of proceeding without counsel nor full disclosure about the range of penalties, Bledsoe was not explicitly informed of his constitutional right to an attorney, and no inquiry was made about his ability to afford an attorney.

Brown, unlike Bledsoe, was well advised of the dangers and disadvantages of proceeding without an attorney. He was college educated and had postgraduate work in computer science. At every hearing, from arraignment in November 2008 through trial in September 2010, despite adequate warnings from the trial judge, Brown repeatedly told the judge that he wished to represent himself. He acknowledged at his arraignment that he had been offered a public defender; he told the court that he preferred "to go pro se"; he announced that he was "coming from the position of medical marijuana," which he had used for years; and he expressed his belief that a lawyer would have difficulty defending someone who had deliberately broken the law. He successfully obtained reduction of his bond—from $30,000 to $2,500—acting pro se and arguing in part that he needed access to his computer for online legal advice and documentation to present at his "test case" trial on marijuana. When he next appeared pro se, the court set a hearing to satisfy itself that Brown understood the chances he was taking in self representation. At the subsequent hearing, the judge said that he was concerned anytime a criminal defendant chose self representation and asked Brown if he understood that he was charged with four felonies—two Class Cs with possible imprisonment of three to ten years and fines up to $15,000, a Class B with five to twenty years and fine up to $15,000, and a Class Y with ten to forty years or life without parole—and that the sentences could run consecutively, meaning he would complete one before beginning the next. Each time Brown stated that he understood.

At a hearing in October 2009, Brown told the court that he was not satisfied with attorneys he had contacted about representation. The court set a date to take Brown's plea and to set trial. Noting that Brown was pro se and had not retained counsel, the court appointed Mel Jackson, a public defender, "to sit second chair" with Brown and assist him in the course of proceedings.

Trial was set for May 20 and 21, 2010. Three days prior to trial, the prosecutor informed the court that he had relayed to Jackson hearsay information that Brown was possibly incompetent to stand trial. The judge observed that Brown had "been here several times," had persisted in his desire to represent himself, and seemed to have answered the judge's questions and be responsive. Nonetheless, the judge took the matter under advisement. At a hearing on May 20, 2010, the judge noted that Jackson had been asked to assist Brown. Jackson presented an Act 3 evaluation order he had prepared, stating that he thought the evaluation necessary despite Brown's objecting to it. The judge approved the order, told Brown he would have to comply, and postponed trial until completion of the evaluation and report.

On September 17, 2010, in chambers before trial began, the judge noted that Brown had appeared pro se throughout the proceedings and would do so at trial but that public defender Mel Jackson had been asked to stand in and assist. The judge also noted that he had several times discussed Brown's right to represent himself and his efforts in representation, informing Brown that he had such a right; and that based on those discussions, as was borne out by the Act 3 evaluation, had concluded that Brown had no mental impairment inhibiting his ability to represent himself.

Expressing a desire to give Brown preliminary information about how a trial worked and for him to understand that he faced four felony charges, the judge explained the sentence ranges for each charge and the possibility of consecutive sentences. Brown responded that he understood. Noting that Jackson would continue to be involved in assisting, the judge gave Brown a lengthy explanation of his rights as the defendant; the State's burden of proof; the procedures that would govern trial, including possible motions that Brown and Jackson might want to consider concerning a directed verdict; and the preparation of jury instructions.[1] Brown again replied that he understood, and the judge asked Jackson if the explanation had left out anything or had been too fast or too slow. The State informed the court that a plea offer had been made, and Brown said that, although he appreciated the offer, he had been protesting the drug war online for twenty years and was putting his "life on the line" to prove his point. The court found that Brown was "prepared to go forward and represent himself." Based on its discussions with him at previous hearings and on the day of trial, the court found that he was fully capable of representing himself and understood the consequences of his conduct.

I agree with the majority that the record before us lacks an explicit statement by the trial judge informing Brown of his fundamental right to representation by an attorney. But I would find that Brown was fully aware of the availability of counsel, in fact was appointed an attorney to assist and advise him, and was adequately advised of the dangers and disadvantages of proceeding without an attorney. Further, Brown demonstrated that he possessed the information necessary to intelligently waive his right to counsel and that he knew what he was doing, making his choice with eyes open. Likewise, he timely waived his right to counsel at arraignment by affirmatively stating he wanted to "go pro se," and he continuously reasserted the waiver in appearances

---

1. Other explanations included voir dire, along with peremptory challenges and challenges for cause; final jury selection; the role of the alternate juror; opening statements; and what could be asked in cross-examination.

spanning nearly two years. Standby counsel was appointed midway in the proceedings before trial commenced and stood ready to assist, but Brown clearly viewed self representation as the way to present his personal views on medical marijuana.

For all the reasons stated above, I would affirm.

HART, J., joins in this dissent.