

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-16-633

LEE SULLIVAN IVORY

APPELLANT

V.

STATE OF ARKANSAS

APPELLEE

**Opinion Delivered:** May 3, 2017

APPEAL FROM THE
INDEPENDENCE COUNTY
CIRCUIT COURT
[NO. 32CR-2014-223]

HONORABLE JOHN DAN KEMP,
JUDGE

AFFIRMED

## BART F. VIRDEN, Judge

An Independence County jury convicted appellant Lee Sullivan Ivory of possession of a controlled substance, possession of drug paraphernalia, and failure to appear. He was sentenced as a habitual offender to an aggregate term of forty-two years in prison. He does not challenge the sufficiency of the evidence supporting his convictions. His only argument is that the trial court erred in permitting him to represent himself at trial. We affirm.

I. *Arraignments and Pretrial Hearings*

A. Arraignment (Drug Offenses)–November 18, 2014

On November 14, 2014, the State filed an information charging Ivory with possession of a controlled substance and possession of drug paraphernalia on October 30, 2014. At his arraignment, the trial court informed Ivory of the range of punishment available for each Class D felony offense. The following colloquy occurred:

COURT:     And since you're facing a possible prison sentence, you have the right to the assistance of counsel. If the Court determines you're an indigent and can't afford to hire an attorney, then the Court can appoint an attorney which will be paid for by the State in representing you.

IVORY:     I waive all them rights.

COURT:     Okay, so you're wanting to waive your right to an attorney?

IVORY:     I waive it all. I want to defend myself.

COURT:     Okay, before the Court can allow you to do that, you're going to have to fill out some paperwork. Can you read and write?

IVORY:     Yes.

. . . .

COURT:     I'm going to need to have a hearing to determine that you're voluntarily, that you're knowingly, and that you're intelligently waiving your right to an attorney and that you're competent to do so. So we'll give you these forms and I've got to make those determinations before the Court is going to allow you to waive an attorney and represent yourself.

IVORY:     Okay.

. . . .

COURT:     Mr. Ivory, when you appeared earlier this morning, you'd indicated to the Court that you wanted to waive your right to an attorney. Is that correct?

IVORY:     That's right, sir.

. . . .

COURT:     [S]ince you are requesting to represent yourself and waive your right to an attorney, the Court needs to make a determination if you're voluntarily, knowingly, and intelligently waiving your right to an attorney and that you're competent to do so. And for the Court to do that, you're going to have to answer some questions that I'm going to ask you regarding these issues.

. . . .

COURT:      How old are you?

IVORY:      Fifty years old.

COURT:      Are you a high school graduate?

IVORY:      No, sir. I have a GED.

COURT:      Do you have any college hours?

. . . .

IVORY:      One semester.

COURT:      What college?

IVORY:      Shorter College, North Little Rock.

COURT:      Do you understand these proceedings here today?

IVORY:      Yes, I do.

COURT:      Is there anything that prevents you from understanding these proceedings?

IVORY:      Due to lack of reading my law books and the lack of law material in the county jail, that's it.

COURT:      Are you under the influence of drugs or alcohol today?

IVORY:      No, sir.

. . . .

COURT:      Since you're facing two [Class D felonies], you're facing a maximum of not more than twelve years in prison or fines of not more than twenty thousand dollars or both. So do you understand the maximum range of punishment?

IVORY:      Yes.

COURT:    And do you understand that under the Constitution of the United States and the Constitution of the State of Arkansas that you're entitled to and will be provided legal counsel free of charge if you're financially unable to obtain legal counsel without causing substantial hardship to yourself or your family? Do you understand that?

IVORY:    Yes.

COURT:    Do you understand that the Court will not continue further in these proceedings until counsel is provided if you request it? And knowing this, do you voluntarily and with knowledge of these rights, waive your right to counsel?

IVORY:    Yes.

COURT:    Do you further understand that even if you're allowed to waive your right to counsel at this time, that that shall not preclude you or prevent you from claiming your right to counsel in these proceedings until the proceedings are completed. Do you understand that?

IVORY:    Right. Yes, sir.

COURT:    Also I need to inform you that you're entitled to legal counsel at every stage of these proceedings where substantial rights of a criminal accused may be affected. So do you understand that?

IVORY:    Could you repeat that again?

COURT:    Okay. You're entitled to have legal counsel at every stage of these proceedings where substantial rights of a criminal accused may be affected. So do you understand that?

IVORY:    Yes.

COURT:    Okay, I need to advise you of some of the dangers and disadvantages of self-representation that include but are not limited to the following. There's a danger of knowing when or if you should waive certain rights. Do you understand that?

IVORY:    Yes.

COURT:    The Rules of Criminal Procedure and the Rules of Evidence will be enforced by this Court. Do you understand that?

IVORY:    Yes.

          . . . .

COURT:    The Court is not going to advise you one way or another in this case like an attorney would. So do you understand the Court's not going to assist or advise you? Do you understand that?

IVORY:    Lead me, right.

COURT:    You do?

IVORY:    Yes.

COURT:    Also, a working knowledge of court procedure, of the rules of evidence, and of conducting a hearing or trial are essential. So do you understand that?

IVORY:    Yes.

COURT:    If motions or objections are not timely or correctly made, then they will not be considered by the court. Do you understand that?

IVORY:    That's right. Yes.

COURT:    The decision to represent yourself is not necessarily a wise decision. Do you understand that?

IVORY:    No, I don't understand that one, sir.

COURT:    Okay. The decision to represent yourself is not a wise decision. Do you understand that?

IVORY:    I object to that. I object to that.

COURT:    You have to speak up. I'm not hearing you.

IVORY:    I object to that answer, sir.

COURT:    Well, it's my duty to inform you that the decision to represent yourself is not a wise decision. Do you understand that?

IVORY:    Yes.

COURT:      You would be permitted to talk to legal counsel concerning these matters should you desire to do so. Do you understand that?

IVORY:      Yes, sir.

COURT:      Okay, I need to inquire a little bit about your background, education, court experience, and knowledge of legal proceedings. Let's see, you told me you're fifty years old, you've got a GED, you've got one semester of college at Shorter College. Is that correct?

IVORY:      Yes.

COURT:      And you said that you understand these proceedings, correct?

IVORY:      Yes.

COURT:      And that you understand the charges and the range of punishment for those charges, correct?

IVORY:      Yes.

COURT:      Have you ever been required to be in court on a felony charge in the past?

IVORY:      No, sir.

COURT:      Okay, so this is the first felony charge that you've had—facing?

IVORY:      Not the first one. My first class D felony.

COURT:      Okay. So have you had other felony charges where you've been required to be in court before?

IVORY:      Yes.

COURT:      That's not a class D felony?

IVORY:      Yes, it was a B.

COURT:      A B felony. And in that case, did you have an attorney representing you?

IVORY:      On one case I think I fired an attorney and I went through the legal process myself.

COURT:      So you represented yourself in that case?

IVORY:      Yes.

COURT:      Have you had other B felonies or other felonies where you've been required to be in court before?

IVORY:      Yes.

COURT:      What classification felonies were they?

IVORY:      A Federal case.

COURT:      Excuse me?

IVORY:      A federal case.

COURT:      A federal case. And did you have an attorney representing you in the federal case?

IVORY:      Yes.

COURT:      So you do have some knowledge of court procedure from the past, correct?

IVORY:      Yes.

COURT:      And you have some knowledge of legal proceedings from the Federal Court case plus the other B felony case, correct?

IVORY:      Correct.

COURT:      Any other court appearances on any other felony cases other than these two, the federal case and the B felony?

IVORY:      Yes. I've had quite a few other cases.

COURT:      Did you have an attorney representing you on any of those other cases?

IVORY:      Yes.

COURT:      How many? Do you recall?

IVORY:　　I figure probably about four cases.

COURT:　　Okay. Did you have some other cases where you've represented yourself and were allowed to waive an attorney?

IVORY:　　Misdemeanor cases.

COURT:　　So you had four other felony cases that you had attorneys on, correct? Is that right?

IVORY:　　Right.

COURT:　　So you've had some other knowledge of legal proceedings and court proceedings in the past, correct?

IVORY:　　Yes, sir.

COURT:　　Now, has anybody applied any kind of force or made any kind of threats against you to get you to waive your right to an attorney?

IVORY:　　No, sir.

COURT:　　Are you doing this of your own free will?

IVORY:　　Yes, sir.

COURT:　　And you said you understand the proceedings here today, right?

IVORY:　　Sir, I'm giving answers to the Court and I'm getting badgered, sir, in court.

COURT:　　Speak up a little.

IVORY:　　I'm being badgered questions in Court, sir. It's the same questions over and over. I feel like I'm being leaded.

COURT:　　I've just got to make a determination whether you're competent to waive an attorney and you're voluntarily doing it, knowingly doing it, and intelligently doing it. Are you currently receiving any kind of psychiatric treatment?

IVORY:　　No, sir.

COURT:　　Have you in the past?

IVORY:          No, sir.

COURT:          Has anybody made any promises to you to get you to waive your right
                to an attorney?

IVORY:          Sir, I'm being badgered.

COURT:          Has anybody made any promises to you to get you to waive your right
                to an attorney?

IVORY:          That question has already been answered.

COURT:          No, I asked you if you'd been threatened or anybody applied any kind
                of force to get you to waive an attorney. I'm asking you now has
                anybody made any promises to you to get you to waive your right to
                an attorney? Do you understand that? Has anybody made any promises
                to you to get you to waive your right to an attorney? Yes or no?

IVORY:          Haven't no one. No.

COURT:          What's the answer?

IVORY:          No.

COURT:          Okay, thank you. Mr. Ivory, after you've been well and sufficiently
                advised of your rights and also of the dangers and disadvantages of
                representing yourself, the Court finds that you have voluntarily,
                knowingly, and intelligently waived your right to an attorney and that
                you're competent to do so. And the Court will allow you to represent
                yourself in this case.

At the conclusion of the arraignment, the trial court scheduled a trial to begin on

January 14, 2015, with a pretrial hearing on January 6, 2015. The trial court entered an

order allowing Ivory to proceed pro se.[1] It provides that Ivory was questioned concerning

his right to counsel and his right to represent himself and was informed that he was entitled

to counsel at every stage of the proceedings where substantial rights may be affected. The

---

[1]The trial court entered a waiver-of-counsel order, but Ivory refused to sign it.

order also provides that Ivory was advised of the dangers and disadvantages of self–representation including, but not limited to, the following:

1. The dangers of knowing when or if he should waive certain rights.

2. That the rules of criminal procedure and rules of evidence will be enforced by this court [and] he should be aware of these.

3. That the court will not assist the defendant, and that a working knowledge of court procedure, the rules of evidence, and conducting a trial and/or hearing are essential.

4. That if motions or objections are not timely and correctly made, they will not be considered by this court.

5. That the decision to represent himself is not wise.

6. That he has talked with legal counsel concerning these matters and hazards or been afforded that right.

7. That the court has inquired of the defendant's background, education, court experience, and knowledge of legal proceedings and has observed the conduct of the defendant.

8. That the court finds that the defendant, after being well and sufficiently advised of his right and the pitfalls of representing himself, and that he voluntarily, knowingly, and intelligently waives and is competent to do so.

### B. Pretrial Hearing–January 6, 2015

The trial court noted that Ivory had waived his right to an attorney at his previous court appearance, and Ivory affirmed that understanding. The trial court stated that, although the trial was scheduled to begin the following week, it would grant a continuance because the State had not yet received lab results. Trial was reset for April 15, 2015, with a pretrial hearing on February 19, 2015. Ivory said, "Okay, Your Honor. Due to the process of my [unintelligible] the Independence County Detention Center, you know, don't have the law material at my request. Is there any way possible to request an OR on my own due

SLIP OPINION

to my legal information?" After questioning Ivory, the trial court agreed to release him on his own recognizance (OR) but instructed him to show up for every court appearance and to sign certain conditions, including submitting to drug tests every week. The trial court reminded Ivory that the next court date was February 19.

### C. Pretrial Hearing–February 19, 2015

"Agent Houston" reported to the trial court that on January 8, 2015, Ivory reported for drug testing but could not produce a urine sample. He was told to come back later, but he did not return. Houston said that Ivory then failed to report on January 15, 22, and 29, and February 5, 12, and 19. The trial court noted that Ivory was not present at the hearing, ordered a warrant to issue based on his failure to appear, and set a new cash bond at $20,000.

### D. Arraignment (Failure to Appear)–July 23, 2015

The trial court noted that the State had amended its information to include a charge of failure to appear, a Class C felony, and informed Ivory of the range of punishment available for committing that offense. The trial court then said,

> And since you're facing a possible prison sentence, you have the right to the assistance of counsel. If the Court determines you're an indigent and can't afford to hire an attorney, then the Court could appoint an attorney which would be paid for by the State in representing you. Do you have an attorney representing you?

Ivory said, "No, sir, I've been representing myself." The trial court responded, "Okay. Because you appeared it looks like several months ago in this case and you were allowed to proceed pro se representing yourself." Ivory said, "Yes, sir." The trial court asked, "Do you want to continue to do that?" Ivory replied, "Yes, sir." Ivory then explained that he had failed to appear on February 19 because he was incarcerated, and he asked the court to reinstate his OR bond or to lower the cash bond. He said, "I was out for my OR

bond because I was studying on my case. I couldn't verbally put in a petition of saying that the jail don't have the qualifications of my legal qualification to study my case." The State objected, and the trial court denied Ivory's request. The trial court set the case for trial on September 23, 2015, with a pretrial hearing on August 25, 2015.

### E.  Pretrial Hearing–August 25, 2015

The trial court noted that Ivory had been representing himself and asked Ivory whether he wished to continue to do so. Ivory said, "Yes, sir." Ivory again requested to be released on his own recognizance "to study up on [his] case." The State objected, and the trial court denied Ivory's request. An additional pretrial hearing was scheduled one day prior to trial.

### F.  Pretrial Hearing–September 22, 2015

The following colloquy occurred:

COURT:  Mr. Ivory, you have previously appeared before the Court and the Court has made a determination that you're going to be allowed to represent yourself. And is that what you still want to do for your trial?

IVORY:  Yes, sir.

COURT:  Okay. Let's see, Mr. Ivory, your case is currently set for trial this week, however, from some of your actions in court on previous court dates and earlier this morning, the Court is going to order an Act 3 evaluation in your case for a psychological evaluation so the Court can be assured that you're competent for trial.

The trial court held review hearings on October 29 and November 9, 2015, but suspended proceedings because the court had not received the results of the Act 3 evaluation. Another hearing was set for November 24, 2015.

### G. Pretrial Hearing–November 24, 2015

The trial court noted that it had received the forensic report from Ivory's Act 3
evaluation. The following colloquy occurred:

COURT: Mr. Ivory, the Court received a forensic report in your case on a Act
3 evaluation. Based on that forensic report, the Court is going to enter
an order that you are competent to proceed to trial. And the Court
will set your case for trial for the jury trials scheduled for March 9th.
And a pretrial hearing will be scheduled for February 2nd. You'd
already had a hearing and you'd waived an attorney, correct?

IVORY: Yes.

COURT: Do you still wish to waive an attorney?

IVORY: Still wish to waive it.

COURT: Okay, so we'll note that you're pro se.

IVORY: Your Honor, I don't have no legal material to study my case. The jail
doesn't have the proper material.

Ivory again requested a reduction of his bond or removal of the cash bond. The State
objected, and the trial court denied Ivory's request. On February 2, 2016, the trial court set
an additional pretrial hearing one day before the start of trial.

### H. Pretrial Hearing–March 8, 2016

The following colloquy occurred:

COURT: Mr. Ivory, you previously appeared in court and we had a hearing and
you waived your right to an attorney. And do you still desire to
represent yourself and waive your right to an attorney?

IVORY: Yes, sir.

COURT: Your case is scheduled for a jury trial tomorrow. Is it still your desire
to have a jury trial?

IVORY: Yes, sir.

. . . .

COURT:      And Mr. Ivory, what the Court is going to do is appoint standby counsel. That standby counsel will be Mr. Tommy Kendrick. Mr. Kendrick will be available in the courtroom at the trial to answer any questions that you might have while your trial is going on. You don't have to ask him any questions if you don't want to. He's there available as standby counsel.

IVORY:      Okay.

. . . .

COURT:      And [Mr. Kendrick] won't be sitting at the counsel table. You'll just be sitting there by yourself. He'll be sitting over to the side and listening to the trial.

     But go ahead and fill out an affidavit so that I can determine that you would be entitled to the attorney should you so desire just as far as your financial condition and we'll get that filed in the record.

. . . .

KENDRICK: Judge, returning to Mr. Ivory's case, he has refused to cooperate with the screening or provide any information to us.

## II. *Jury Trial–March 9, 2016*

In chambers before trial began, the trial court permitted Ivory to wear his yellow jail uniform because, even though street clothes had been offered and made available to him, he did not want to wear someone else's used clothing. The trial court then explained the trial procedure. Ivory made an opening statement.

The evidence revealed that Ernie Gillihan with the Independence County Sheriff's Office stopped Ivory for speeding. When Gillihan ran Ivory's name and date of birth, he learned that Ivory's driver's license had been suspended and that he had warrants. Arkansas State Trooper Jeremy Hughes, who had been called to assist, watched other officers speaking

at the front of Ivory's truck while Ivory stood back and leaned against his truck. When the officers told Ivory to approach, Hughes saw Ivory make an arm motion toward the bed of the truck and heard a "kind of clanking sound." Hughes found a device for smoking methamphetamine in the truck's bed. On the way to the station, Ivory admitted having "some dope on him." He then spat a plastic baggie containing a crystal-like substance into Gillihan's hand. Kim Brown, a drug chemist at the Arkansas State Crime Lab, testified that the substance in the baggie was methamphetamine weighing 0.4919 grams, plus loose powder weighing 0.1336 grams. The pipe was tested as well, and it was found to have burned methamphetamine residue on it. Finally, Jennifer Neal, a deputy clerk for the Independence County Circuit Clerk's Office, testified that Ivory did not appear in court on February 19, 2015.

Ivory made a closing argument. The jury found him guilty on all counts. In the sentencing phase, when the State moved to introduce Ivory's prior convictions, Ivory objected, saying that he had "done his time" and had not been "on paper" since 2008. The trial court overruled his objection. Ivory was sentenced as a habitual offender to twelve years on possession of methamphetamine, ten years on possession of drug paraphernalia, and twenty years for failure to appear. The trial court ran the sentences consecutively for a total of forty-two years' imprisonment. Ivory filed a timely appeal to this court.

III.  *Waiver of the Right to Counsel*

Ivory argues that the trial court erred in concluding that he had knowingly and intelligently waived his right to counsel and in permitting him to represent himself. The Sixth Amendment to the United States Constitution, made obligatory upon the states by

the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Brown v. State*, 2012 Ark. App. 314, 416 S.W.3d 260. Article 2, section 10 of the Arkansas Constitution provides that an accused in a criminal prosecution has the right to be heard by himself and his counsel. *Id.* It is also well established that an accused has a constitutional right to represent himself. *Williams v. State*, 2009 Ark. App. 684, 372 S.W.3d 358.

The constitutional right to counsel, however, is a personal right and may be waived. *Brown*, *supra*. There are three requirements that must be met before allowing a defendant to proceed pro se: (1) the request to waive the right to counsel must be unequivocal and timely asserted, (2) there must have been a knowing and intelligent waiver, and (3) the defendant must not have engaged in conduct that would prevent the fair and orderly exposition of the issues. *Mayo v. State*, 336 Ark. 275, 984 S.W.2d 801 (1999).

The Arkansas Supreme Court has held that the trial court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *Gibson v. State*, 298 Ark. 43, 764 S.W.2d 617 (1989). The accused must have full knowledge or adequate warning concerning his rights and a clear intent to relinquish them before a waiver can be found. *Id.* The determination of whether any defendant intelligently waived his right to counsel is dependent upon the particular facts and circumstances of the case, including the background, the experience, and the conduct of the accused. *Mayo*, *supra*. Significantly, every reasonable presumption must be indulged against the waiver of the fundamental constitutional right to counsel. *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996). In determining whether a defendant knowingly and



intelligently waived his constitutional right to counsel, our standard of review is whether the trial court's finding was clearly against the preponderance of the evidence. *Brown*, *supra*.

### IV. *Discussion*

#### A. Ivory's Request Was Unequivocal and Timely Asserted

Ivory sought to waive his right to counsel at his first court appearance; thus, his request was timely. Ivory argues that "the Appellant's waiver was equivocal based on Appellant's lack of sufficient legal materials with which to prepare." We cannot agree. Ivory complained of the lack of legal material in conjunction with his requests to be released on his own recognizance or to have his cash bond reduced. He said nothing about hiring his own counsel or having counsel appointed to represent him. Rather, Ivory insisted on representing himself at his arraignments, and he reaffirmed his desire at each pretrial hearing that he attended. His request to represent himself was unequivocal. We hold that the first *Mayo* requirement was met.

#### B. Ivory's Waiver Was Made Knowingly and Intelligently

In *Faretta v. California*, 422 U.S. 806 (1975), the United States Supreme Court stated that, although a defendant need not have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he "should be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id*. at 835 (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942)). The *Faretta* Court further noted that "technical legal knowledge as such [is] not relevant to an assessment of [a defendant's] knowing exercise of the right to defend himself." *Id*. at 836. A specific warning of the

dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999).

Ivory contends that he was not explicitly informed that he had an *absolute* constitutional right to counsel. While the trial court did not use the word "absolute," the trial court clearly informed Ivory of his constitutional right to counsel at the beginning of both arraignments. The trial court also advised Ivory that he could have counsel free of charge if it was determined that he is indigent, although the record shows that Ivory did not cooperate with that determination. The trial court further told Ivory that he was entitled to counsel at every stage of the proceedings and that he could change his mind about self-representation at any time.

Ivory further argues that the trial court did not mention that, by proceeding pro se, he was waiving his rights under Ark. R. Crim. P. 37, that the trial court did not inform him of "specific substantive dangers" of representing himself; that the trial court "never widened the inquiry" after his arraignments; and that the trial court failed to apprise him of the new range of punishment available once he was looking at three charges instead of two. Ivory submits that *Williams*, *supra*, presents a "great example" of how a trial court should interview a defendant wishing to proceed pro se. We agree; however, there is no set script, and whether there has been a knowing and intelligent waiver is judged by each case's particular facts and circumstances. *Mayo*, *supra*.

Here, the trial court made a sufficient inquiry, although not every possible downside to self-representation was discussed. The trial court's inquiry revealed that Ivory was fifty

years old, could read and write, had a GED and one semester of college, had some knowledge of court procedure from past cases where he had been represented by counsel, and had previously represented himself on a felony charge and some misdemeanor charges. The trial court informed Ivory of the ranges of punishment available for each offense. The trial court warned Ivory that his motions and objections would not be considered if they were not timely and correctly made, that he was waiving certain rights by representing himself, that he should be aware of the rules of criminal procedure and rules of evidence, that the trial court would not assist or advise him during the trial, and that representing himself was not a wise choice. The trial court told Ivory that he could speak with an attorney about those warnings if he desired. We cannot say that the trial court's determination—that Ivory knowingly and intelligently waived his right to counsel—was clearly against the preponderance of the evidence. We hold that the second *Mayo* requirement was met.

### C. Ivory Did Not Engage in Conduct That Prevented the Fair and Orderly Exposition of the Issues

According to Ivory, his failure to act as an experienced criminal defense attorney in certain situations amounted to conduct that prevented the fair exposition of the issues. We disagree with Ivory's interpretation of what conduct is necessary to prevent the fair and orderly exposition of the issues. The record does not show that Ivory was disruptive or disorderly or that he abused the dignity of the courtroom. *See, e.g.*, *Pierce v. State*, 362 Ark. 491, 209 S.W.3d 364 (2005). Rather, while Ivory had previously failed to appear for a hearing, he did appear at his trial; he prevailed on an argument about his clothing choice; he gave an opening statement and closing argument; he cross-examined the State's witnesses and called a witness of his own; he requested permission from the court before approaching

19

witnesses; and he raised objections at trial and in the sentencing phase. We hold that the third *Mayo* requirement was met.

### D. Standby Counsel's Assistance Was Not Substantial

Ivory argues that the participation of standby counsel was not substantial such that counsel could be said to have effectively conducted a defense. The assistance of standby counsel can rise to a level where the defendant is deemed to have had counsel for his defense, thereby mooting any assertion of involuntary waiver. *Brown*, *supra*. We agree, and the State appears to concede, that the record shows that Kendrick's assistance was not substantial.

Affirmed.

HARRISON and GLOVER, JJ., agree.

*Hancock Law Firm*, by: *Sharon Kiel*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.