

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–17–17

|  |  |
|---|---|
| DARRYL VINCENT TALLEY, JR.<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **OPINION DELIVERED:** OCTOBER 25, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR–11–3766]<br><br>HONORABLE LEON JOHNSON, JUDGE<br><br>AFFIRMED AND REMANDED FOR CORRECTION |

## ROBERT J. GLADWIN, Judge

Appellant, Darryl Talley, appeals his convictions by the Pulaski County Circuit Court on charges of robbery, theft of property, and employment of a firearm to commit aggravated robbery, for which he received an aggregate sentence of fourteen years' imprisonment. Appellant argues that the trial court erred in denying his request to represent himself at trial and, as a procedural matter, that his sentencing order erroneously reflects that he was convicted of a Class B felony rather than a Class C felony, theft of property. We affirm appellant's convictions and remand the case for the limited purpose of allowing the trial court to correct the error in the sentencing order.

On an initial procedural note, the parties agree that there is an error that needs to be corrected on the sentencing order. Appellant was charged with, among other charges, theft of property with a value of $25,000 or more, a Class B felony offense, in violation of Arkansas Code Annotated section 5–36–103(b)(1)(A) (Supp. 2011). The trial court found

him guilty of the lesser-included offense of theft of property with a value of less than $25,000 but more than $5,000. It is clear from the transcript that appellant was convicted of the lesser-included Class C felony, theft of property, but the sentencing order reflects a checkmark beside the offense classification "B" for the theft-of-property conviction. The ten-year sentence indicated on the sentencing order is consistent with the sentence announced by the trial court in open court and is within the statutory range for a Class C felony offense. Because the checkmark beside classification "B" rather than "C" appears to be simply a clerical error, we hold that this is the type of error that trial court can correct at any time by entering an amended sentencing order nunc pro tunc. *See McCuen v. State*, 338 Ark. 631, 999 S.W.2d 682 (1999). We also note that the sentencing order erroneously indicates that appellant was sentenced to an additional term of suspended imposition of sentence for the theft-of-property conviction. [1] Like the checkmark on offense classification "B", this is a clerical error. Accordingly, we remand for the limited purpose of allowing the trial court to correct these errors. *See Pascuzzi v. State*, 2016 Ark. App. 213, at 1, n.2, 489 S.W.3d 709, 710, n.2.

I. *Facts and Procedural History*

On May 7, 2013, the State filed an amended felony information against appellant, alleging in relevant part that on or about October 7, 2011, appellant committed against Charleston Brown two felony offenses: (1) the Class Y felony of aggravated robbery; and

---

[1]For the aggravated-robbery conviction, appellant was sentenced to a term of ten years in the Arkansas Department of Correction (ADC), with a four-year firearm enhancement, and to an additional seven-year suspended imposition of sentence. For the theft-of-property conviction, he was sentenced to a term of ten years in the ADC to run concurrently with the aggravated-robbery sentence.

(2) Class B felony theft of property. In the information, the State also alleged that because appellant employed a firearm to commit a felony, any sentence of imprisonment imposed on him for committing that felony should be enhanced pursuant to Ark. Code Ann. § 16-90-120(a)–(b) (Repl. 2015).

Appellant's bench trial was held on May 2, 2016. Appellant preserved the issue now before us by repeatedly asking, at the beginning of his trial, that he be allowed to represent himself and be his own defense counsel. The trial court denied appellant's repeated requests to represent himself at trial and act as his own lawyer, and the trial court found appellant guilty of having committed aggravated robbery, Class C felony theft of property, and of having used a firearm to commit aggravated robbery. At the sentencing hearing held on June 29, 2016, the trial court sentenced appellant to an aggregate sentence of fourteen years' imprisonment pursuant to sentencing orders filed on July 6, 2016. Appellant filed a timely notice of appeal on August 5, 2016.

## II.   *Standard of Review and Applicable Law*

A defendant in a criminal case has a Sixth and Fourteenth Amendment right to represent himself at trial. *Faretta v. California*, 422 U.S. 806 (1975). A defendant in a criminal case also has the right to represent himself at trial and act as his own lawyer pursuant to article 2, ·section 10 of the Arkansas Constitution. *Ivory v. State*, 2017 Ark. App. 269, 520 S.W.3d 729. Whether a trial court erred in denying a defendant's request to represent himself at trial is an issue of law. *State v. Blanchard*, 236 P.3d 845, 848 (Ore. App. 2010). This court reviews issues of law de novo. *Howard v. State*, 2010 Ark. App. 382.

### III. *Discussion*

At the start of appellant's bench trial, he requested that the trial court allow him to represent himself and act as his own lawyer. After the following colloquy that focused on how much appellant knew about the law and courtroom procedure, the trial court denied appellant's request:

THE COURT: Set for bench trial today. Both sides ready for trial?

DEFENSE COUNSEL: We are, sir. However, the defense, I believe there is a pro se motion my client would like to address to the court before we proceed.

THE COURT: Mr. Talley, good afternoon, sir.

APPELLANT: I'm revoking him as my public defender—

THE COURT: On what grounds?

APPELLANT: —and I would like to represent myself.

THE COURT: On what grounds?

APPELLANT: Oh, on what ground?

THE COURT: Yeah, that's the question I asked you twice.

APPELLANT: Because I'm competent to withstand trial.

THE COURT: You are?

APPELLANT: Yes, I—

THE COURT: Do you know the rules of evidence?

APPELLANT: Yes, sir.

THE COURT: How far did you go in school?

APPELLANT: I went—I compl—went all the way in the 12th grade, from 9th to 12th grade, Little Rock Central High.

THE COURT:   And what did you do after school to learn about the law?

APPELLANT:   What did I—I'm not schooled in law.

THE COURT:   What do you know about the rules of evidence?

APPELLANT:   Yes, sir.

THE COURT:   What do you know about the rules of evidence?

APPELLANT:   I know that the evidence must be brung forward if it's requested by law before I proceed in any of my cases or take any pleas. And I asked the gentleman a couple of times—that there was revoked. It's like they're using scare tactics trying to get me to cop pleas and I'm steady telling them no, I'm not waiving any of my rights.

THE COURT:   Okay. I'm not asking you about whether you're waiving any of your rights. I want to know what do you know about the law that governs what is admitted into evidence and what cannot be admitted into evidence.

APPELLANT:   I know the basic rule of affidavit.

THE COURT:   Okay. Tell—rule of affidavits?

APPELLANT:   Yes.

THE COURT:   Okay. Do you know anything about the rules of chain of custody?

APPELLANT:   Chain of custody?

THE COURT:   Yes, sir.

APPELLANT:   I don't have any idea what—

THE COURT:   Okay.

APPELLANT:   Okay.

THE COURT:   I'm looking at in these charges, one of them is a Class Y Felony. Do you know what the charge—range of punishment is for a Class Y Felony?

APPELLANT:   Yes, sir.

THE COURT:   What is it?

APPELLANT:   Up to forty years or life.

THE COURT:   And do you know what other charges you have?

APPELLANT:   I think it was for a theft by receiving for a stolen car, stolen gun, which I had absolutely nothing to do with—

THE COURT:   No, no, no, no, no. I'm not asking—

APPELLANT:   Oh, okay.

THE COURT:   —you to cop a plea. I'm asking you to tell me what you know, okay?

APPELLANT:   Oh, that's what I—well, yeah, it's right—as far as right now, I know they were trying to charge me with a stolen car and a stolen firearm.

THE COURT:   What's the nature of your defense?

APPELLANT:   What's my nature of defense?

THE COURT:   Yeah, what is your defense to these charges?

APPELLANT:   What I filed for the chambers to the judge chamber, that's all-

THE COURT:   No, no.

APPELLANT:   —that I electronically filed April 29th. And I also filed an affidavit of truth this morning, May 2nd, that I have put on the court's record.

THE COURT:   Okay. Pretend that I just now asked you a question that requires you to tell me what you have in your head as opposed to what I can read. Pretend that I'm waiting for you to answer the question I just asked you.

APPELLANT:   You asked me what I'm going to use for my defense?

THE COURT:   What is your defense?
APPELLANT:   My counsel.

THE COURT:   No, no. Your own counsel is what you want. I want to know what is the legal basis for your defense.

APPELLANT:   My legal defense is what I filed.

THE COURT:   Do you know what alternative defenses you might assert under the law?

APPELLANT:   I have a right to my own private counsel.

THE COURT:   No. Excuse me. Let me explain to you why I'm having this conversation with you. You have the right in a criminal charge for two things. First of all, you have the right to decide whether to plead guilty or not.

APPELLANT:   Right.

THE COURT:   Okay.

APPELLANT:   Yes.

THE COURT:   And secondly, you have the right to choose your lawyer –

APPELLANT:   Right, that's—okay.

THE COURT:   If you opt-- if you are unable to afford a lawyer, the court has an obligation to appoint a lawyer for you. If you assert that you want to represent yourself, then I have a responsibility to determine whether or not you are competent to defend yourself.

APPELLANT:   That's right.

THE COURT:   In order for me to decide that, I've got to weigh the charges you face and your knowledge of the law.

APPELLANT:   Yes, sir.

THE COURT:   So the reason I'm asking you these questions is not to play games with you or try to embarrass you, I'm trying to determine whether or not you are competent to do what a lawyer would have to do in order to provide you with an adequate defense because under the law you have a constitutional right to what we call effective counsel.
APPELLANT:   Right.

THE COURT: And I do not have the right to allow you to ineffectively represent yourself—

APPELLANT:   Right.



THE COURT: —any more than I have the right to allow a lawyer to provide you with ineffective counsel. If l do not believe that you are effect—can mount an effective representation, I do not have to listen to you say you want to revoke your lawyer. I can say, your request to revoke counsel is denied. And that's why I'm having this inquiry.

APPELLANT: Yes.

THE COURT: Okay. So let's start over. We can agree that you have no legal training?

APPELLANT: No, I'm not schooled in law.

THE COURT: Okay. That's what I just told you.

APPELLANT: Yes.

THE COURT: We agree to that, right?

APPELLANT: Yes.

THE COURT: We agree that you are charged with a Class Y felony, which is the highest range of punishment of felony short of capital murder, which is life without parole, right?

APPELLANT: Yes. I understand.

THE COURT: Because Class Y is ten to forty or life, right?

APPELLANT: Yes.

THE COURT: We agree that you do not know anything about the alternative defenses that can be asserted to the charges you face?

APPELLANT: Yes, I do. I do have access to my private—my own private attorney or whatever—my own legal counsel.

THE COURT: I'm still trying to wait until you hear—say at least one word that would constitute a defense to these charges. I know you're pleading not guilty, but what—as a judge, I have to know and the prosecution is entitled to know the nature of your defense.

APPELLANT: I want you guys to prove their case, bring forth their evidence, which I put in—I filed my motion for discovery and my preservation of evidence, and it—and it needs to be answered.



THE COURT: [Defense counsel], are you ready for trial?

DEFENSE COUNSEL: Yes.

THE COURT: Nature of defense?

DEFENSE COUNSEL: Your Honor, it'll be general denial.

THE COURT: How many witness[es] do you have?

DEFENSE COUNSEL: Only the defendant if he chooses to testify.

THE COURT: Mr. Talley, based upon the inquiry the Court has undertaken, the Court finds that you do not have the requisite knowledge in the law and the nature of defense or in the kind of decision-making that would be necessary in order to assert an adequate representation of yourself. In order to protect your constitutional rights, the Court is going to deny your request to dismiss your counsel. [Defense counsel], you are continually to be engaged and to maintain the defense on behalf of Mr. Talley. Mr. Talley, do you have anything else you need to say before we move on?

APPELLANT: Yes, sir. Out of my due process of law rights, that's what I was saying, like I need everything that's been filed into THE COURT, I need a copy of everything that was filed to THE COURT in my possession. I don't have motions, discoveries or any of this, so that's why I filed my motion for discovery and my preservation of evidence.

THE COURT: [Defense counsel]?

DEFENSE COUNSEL: Yes.

THE COURT: Has discovery been exchanged?

DEFENSE COUNSEL: Your Honor, I have gone over all the discovery with the defendant, both when he was in G-Unit at the Pulaski County Jail, in my office and in numerous visits here to the courtroom.

THE COURT: Has the State produced discovery requested by the defense?

DEPUTY PROSECUTING ATTORNEY: We have.

THE COURT: And when was that done? And I'm doing all this so there will be a record because Mr. Talley, in case you disagree with my decision and you want to

take an appeal, we'll have a record so we'll know that there was a defense motion to produce discovery. There will be a response to the defense motion to produce. And I want to make sure that's all in the record.

DEFENSE COUNSEL: Your Honor, I may have misstated my answer to your question. If discovery has been exchanged, I received discovery in 1366 in 2013 when I was appointed to represent Mr. Talley at that time. Marion Humphrey was private counsel for the defendant in 11-3766. He was—

THE COURT: I can help you. According to my notes, public defender was appointed on November 7, 2011, in case 2011-3766. Public defender was relieved and Marion Humphrey was appointed counsel for the defendant on February 6, 2012. Mr. Humphrey represented the defendant until he moved to withdraw November 5, 2013. A public defender was reappointed on that date. Public defender has remained appointed counsel for Mr. Talley since November 5, 2013, in 2011-3766.

DEFENSE COUNSEL: Your Honor, I do remember receiving a discovery packet from [former defense counsel] on the date that he was released.

THE COURT: In case 2013-0066, public defender was appointed on April 15, 2013. That's you, right?

DEFENSE COUNSEL: Yes, sir.

THE COURT: [Deputy prosecuting attorney], when was discovery produced in that case?

DEPUTY PROSECUTING ATTORNEY: Your Honor, I don't have a date that it was actually sent. I have that we scanned it—our case file in electronically on January 9, 2013, and it was provided shortly thereafter, discovery was filed by the defense.

THE COURT: [Defense counsel], is there any defense discovery request that is outstanding at this time?
DEFENSE COUNSEL: No, there is not.

THE COURT: Court's going to deny the motion—the pro se motion of the defendant to relieve counsel. Mr. Talley, would you please have a seat at counsel table beside your lawyer.

A trial court must grant a defendant's request to represent himself at trial if three circumstances are present: (1) the defendant's request to waive his right to counsel and represent himself must be unequivocal and timely asserted; (2) the defendant makes a

knowing and intelligent waiver of his constitutional right to be represented by counsel; (3)

the defendant has· not engaged in conduct that would prevent the fair and orderly exposition

of his trial. *Reed v. State*, 2017 Ark. 246, 524 S.W.3d 929; *Pierce v. State*, 362 Ark. 491, 209

S.W.3d 364 (2005). The trial court must establish on the record that the defendant is making

a knowing and intelligent waiver of his right to counsel by engaging a colloquy with the

defendant that is sufficient to show that the defendant is aware of his right to counsel and is

aware of the danger in representing himself. *Pierce, supra*; *Bledsoe v. State*, 337 Ark. 403, 989

S.W.2d 510 (1999).

The trial court must question the defendant to make certain that he or she knows

the following information: (1) that the defendant is entitled to an attorney; (2) that the

defendant can have an attorney to represent him at trial even if he cannot afford an attorney;

(3) the advantages of being represented during trial by an attorney; (4) the drawbacks of not

being represented at trial by an attorney. *Bledsoe, supra.* A defendant's lack of technical legal

knowledge is not relevant to an assessment of whether he has made a knowing and

intelligent waiver of his right to counsel. *Whitlow v. State*, 2016 Ark. App. 510, 506 S.W.3d

272. If a defendant's request to represent himself at trial is proper, a trial court's failure to

conduct a sufficient *Faretta* colloquy is reversible error. *Pierce, supra.* An erroneous denial of

a defendant's request to represent himself at trial is not subject to harmless-error review.

*McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984).

Appellant argues that his request to represent himself at trial was made in a timely

manner and was unequivocal. He points out that the trial court made no finding that, if

allowed to represent himself at trial, appellant would disrupt the proceedings or that his

request to represent himself was untimely. Appellant acknowledges that the trial court did have a colloquy with him, but notes that during such, the trial court focused on whether he had the technical legal knowledge to represent himself at trial. At one point, the trial court specifically observed, "[T]he Court finds that you do not have the requisite knowledge in the law and the nature of defense or in the kind of decision-making that would be necessary to assert an adequate representation of yourself." Because the trial court's colloquy with appellant focused solely on his inability to act as his own lawyer, appellant urges that the trial court committed reversible error in denying his request to represent himself at trial.

We agree with appellant's claim that the trial court erroneously relied on a flawed *Faretta* inquiry in making its decision; however, that does not end our inquiry. The State discusses two reasons, notwithstanding appellant's challenge to the trial court's *Faretta* inquiry, in support of its argument that the trial court did not err in its determination: (1) appellant's history of behavior aimed at delaying and disrupting the orderly, efficient, and effective administration throughout the proceedings; and (2) appellant's failure to make an unequivocal request to represent himself.

In *Faretta*, *supra*, the United States Supreme Court held that an accused generally has a right to defend himself under the Sixth Amendment, because it is the defendant who will suffer the consequences if the defense fails. *See id*. at 819–20. That right is not, however, without some limit. The *Faretta* court clearly explained that although a defendant need not have the skill and experience of a lawyer to competently and intelligently choose self-representation, he "should be made aware of the dangers and disadvantages of self-

representation so that the record will establish that he knows what he is doing and his choice is made with open eyes." *Id.* at 835.

Additionally, where a defendant seeks to have another attorney represent him, his request to proceed pro se is not unequivocal, and the analysis in *Faretta* and its progeny does not apply. *Whitlow, supra.* Our supreme court has held that "the right to counsel may not be manipulated or subverted to obstruct the orderly procedures of THE COURT, or to interfere with the fair, efficient, and effective administration of justice, particularly when a change of counsel is sought on the eve of trial, primarily for the purpose of delay, and without making any effort to obtain substitute counsel." *Whitlow*, 2016 Ark. App. 510, at 7–8, 506 S.W.3d at 276. And this court has explained that "[t]he constitutional right to counsel is a shield, not a sword, and a defendant may not manipulate [the] right for the purpose of delaying trial or playing 'cat-and-mouse' with THE COURT." *Coakes v. State*, 2014 Ark. App. 298, at 5 n.1; s*ee also Faretta*, 422 U.S. at 834 n.46 (noting that the trial court may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct); *Brown v. Gibson*, 2012 Ark. 285, 423 S.W.3d 34 (holding that a defendant's pro se status may be terminated if he or she has demonstrated disruptive behavior or used the right as a tactic for delay, disruption, distortion of the system, or manipulation of the trial process); *Burns v. State*, 300 Ark. 469, 780 S.W.2d 23 (1989) (stating that the right to counsel of one's choice is not absolute and may not be used to frustrate the inherent power of THE COURT to command an orderly, efficient, and effective administration of justice).

We take this opportunity to reiterate that the right to represent oneself "is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n.46.

The record in this case reflects that, on November 11, 2011, the public defender's office was appointed to represent appellant. On February 6, 2012, the public defender's office was relieved as counsel, at least as to some charges against appellant, and former Circuit Judge Marion Humphrey entered an appearance on appellant's behalf.[2] Despite being represented by counsel, appellant filed several pro se filings on November 5, 2013, March 30, 2015, September 14, 2015, January 11, 2016, and May 4, 2016.

On November 5, 2013, the date of the first trial setting, Mr. Humphrey brought to the trial court's attention one such pro se filing. After the trial court stated that it would not entertain a pro se motion unless it was adopted by counsel, and after counsel declined to adopt the pro se filing, appellant stated, "I'll represent myself. I don't have a problem." Mr. Humphrey then moved for and was granted permission to withdraw. The trial court then began to inquire about appellant's request to represent himself. Appellant stated that he understood that under the Sixth Amendment, he had a right to counsel, but denied that he was waiving that right. He claimed to be a "sovereign citizen" and insisted that he did not understand the charges against him or the State's right to proceed in the matter. Even after the charges had been read and explained to him, appellant stated that he did not understand "a single charge against him."

---

[2]The public defender's office apparently remained appointed to represent appellant on charges filed in a separate case number.

After appellant denied waiving his right to counsel and stating that he did not understand the charges against him, the trial court denied appellant's request to proceed pro se and again appointed the public defender's office to represent him. Appellant, immediately thereafter, objected to the public defender's representation, refused to sign his notice sheet, and exploded into an emotional outburst that runs on for eleven pages of the trial transcript and includes the following examples of statements that, among others, appellant expressed during his outburst:

APPELLANT: I swear to God, man. This whole courthouse is going to be—

APPELLANT: He ain't representing me. Why he trying to represent me? No, no. I'm not a party.

APPELLANT: Man, this is bullshit. All of y'all are going to have charges.

APPELLANT: Yeah, that's what I'm saying. Now, that's illegal time I did on this one. That's what I'm saying, he's taking me into custody and you ain't even representing me, brother. That's what I'm trying to say. I want to try to step in. I don't matter what you're talking about, brother. Real talk. I swear to God, y'all better get this sh__ in order. Except for me, everybody rules their goddamn charges. That's what I'm saying, you're not representing me, Mr. David Sudduth, so you need to withdraw because I ain't going into custody. What the f__k am I going into custody for?

APPELLANT: You can't represent me. What's your nationality? Are you—you are a European (unintelligible) occupying the land of North America, which is—can you bring your nationality forward for the record? Your nationality, Ireland. That's what I'm saying. That needs to be stated for the record. It don't matter what they charge me with, it's criminal. They've got to produce their victim, you know what I'm saying? This is Penal Code 16. I know. He's just an officer of THE COURT, but I know what I'm talking about in the law. So they are violating this. They got you to put me in handcuffs. Really, I consented to it. I ain't trying to fight, but I have a right to protect myself. I'm saying what are they taking me into custody for? That's what I'm saying. I'm not trying to—if this is a way to try to get a mental evaluation— I did. Yeah, they taking me into custody illegally. I'm trying to represent myself in court as a prophet of the son. I need to talk to the man, they are trying to take me in for a mental evaluation, which I don't agree to, so they are violating constitutional law and international law.

Based on appellant's behavior in the courtroom during the hearing, a second Act 3 evaluation was requested. At a hearing on March 30, 2015, appellant's appointed counsel brought to the trial court's attention another request by appellant to represent himself. When asked by the trial court whether he wished to represent himself, appellant stated that he "would be proceeding *in propria persona*." The charges against him were read, and appellant once again insisted that he did not understand the charges or the penalty ranges. The trial court denied appellant's request, basing its decision, at least in part, on appellant's failure to follow court rules and procedure, including being habitually late for court.

At a hearing on September 14, 2015, appellant, through his appointed counsel, yet again requested to represent himself. The trial court responded to the request, as follows:

THE COURT: I believe we went—we've gone through that. He's not aware of the process—

DEFENSE COUNSEL: We have.

THE COURT:  —and doesn't know what is going on, if I'm not mistaken, so I'm not going to allow him to practice—practice law.

DEFENSE COUNSEL: Yes, sir.

THE COURT: He doesn't know how to contain himself or the basis for the allegations or anything, so.

At a hearing on January 11, 2016, appellant's counsel brought to the trial court's attention yet another pro se motion by appellant—this time, indicating appellant's intention to hire a private attorney. According to appellant's appointed counsel, appellant had made allegations that his appointed counsel was involved in human trafficking. The trial court

instructed appellant to hire an attorney before the trial date on May 2, 2016, and that he would not be granting another continuance.

Appellant appeared with his appointed counsel, Mr. Sudduth, ready for trial on May 2, 2016, and addressed the trial court pro se, stating that he wished to revoke Mr. Sudduth as his public defender and represent himself. During a colloquy between appellant and the trial court, the trial court asked appellant what his defense was, to which appellant, responded, "My counsel." Appellant also stated that he had "access to my private—my own private attorney or whatever—my own legal counsel." The trial court ultimately denied appellant's request to dismiss his appointed counsel, and Mr. Sudduth represented appellant at trial.

From the outset and continuing through the pendency of this case, appellant repeatedly displayed an intent to delay and frustrate the orderly and effective administration of justice. As early as his arrest in October 2011, he claimed to be a "sovereign citizen" and refused to provide any identifying information. For more than four years, and throughout the entire pretrial process, he manipulated both his right to counsel and his right to self–representation in order to delay and obstruct the procedures of the trial court. He refused to follow the rules and procedures of the trial court. He filed pro se pleadings despite being represented by counsel, and he continued to do so even after several requests for self–representation had been denied, and after having been warned by the trial court to follow the rules. He displayed emotional and disrespectful outbursts in the courtroom. He requested to represent himself, yet denied that he was waiving his right to counsel. He asked

to hire a private attorney, asserting unfounded allegations that his appointed counsel was involved in human trafficking.

We agree with the trial court's assertion that appellant "[did not] know how to contain himself[.]" As further evidence, even after his trial in May 2016, appellant refused to sign a notice of his sentencing hearing date, claimed he was "a natural person . . . not subject to any of your corporate states" and "not a United States Citizen," and expressed further disrespect to the trial court, interrupting the trial court's comments with, "I don't give a damn, brother." Because appellant was not "able and willing to abide by the rules of procedure and courtroom protocol," *see Gilbert v. State*, 282 Ark. 504, 505–06, 669 S.W.2d 454, 456 (1984), we affirm.

Furthermore, we hold that appellant's request to represent himself was not unequivocal. With his first request for self-representation, appellant altogether denied that he was waiving the right to counsel. In later requests, he stated only that he was "proceeding *in propria persona*," yet not waiving any rights. Shortly before trial, he requested to hire a private attorney, and then on the day of trial, and with regard to a new request to represent himself, he stated that he had access to a private attorney. Because his request to represent himself was not unequivocal, *Faretta* and its progeny do not apply. *Whitlow, supra.*

Affirmed; remanded for correction.

HARRISON and KLAPPENBACH, JJ., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Ass't Att'y Gen., for appellee.