Cite as 2021 Ark. App. 264

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CR–20–605

| | | |
|---|---|---|
| JARMER ROBERSON | | **Opinion Delivered** May 26, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE DREW |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 22CR-19-209] |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | HONORABLE SAM POPE, JUDGE |
| | | |
| | | AFFIRMED |

**RITA W. GRUBER, Judge**

A Drew County jury convicted appellant Jarmer Roberson of second-degree criminal mischief, failure to stop after accident with death or injury, and driving while intoxicated (DWI). He was sentenced as a habitual offender to twenty-four years' imprisonment. On appeal, he argues that the circuit court violated his constitutional rights to represent himself and to be present and to confrontation. We affirm.

In the early morning hours of October 20, 2019, appellant was involved in two hit-and-run accidents before driving his truck through the entrance of Walmart in Monticello. As a result, he was charged with three counts of aggravated assault, first-degree criminal mischief, failure to stop after accident with injury or death, and DWI.

Appellant's counsel orally moved for a mental evaluation at a January 21, 2020 pretrial hearing. The bailiff indicated that appellant was not at the hearing because his behavior at jail had caused him to be tased. When the court asked appellant's counsel of his

assessment of appellant, counsel stated that appellant had indicated that "voices were telling him he had to get into Walmart." Counsel stated that jail staff reported that appellant has fits of screaming and yelling that can be heard outside. The court granted the motion to determine appellant's fitness to proceed in a February 7 order. The examiner concluded that appellant was fit to proceed. On April 10, the court granted a motion for determination of criminal responsibility. The examiner concluded that appellant was criminally responsible for his actions at the time of the offense.

On April 30, appellant filed a letter with the court stating he had been in jail 208 days and was requesting "to file a motion to speedy trial also a motion of ineffective assistance of counsel against [his] lawyer[.]" Another pretrial hearing took place on June 23 via Zoom. Appellant's counsel informed the court that appellant "often refuses to talk to me" and "won't really cooperate with me in discussions at all." Counsel stated that he discussed a plea offer with appellant but that talk of a counteroffer upset appellant "pretty bad." Counsel called the jail to speak with appellant but was told "they didn't know if he wanted to," and appellant never called. Appellant asked to make a statement, and the court suggested that he might want to cooperate with his attorney in preparation for trial. Appellant stated:

> With all due respect, Your Honor, I feel that his assistance is ineffective. I also done wrote the Public Defender Commission trying to fire him and get me a new public defender because his assistance is ineffective. He came at me with a plea that was ran consecutive on all counts after five months I done been incarcerated. He never came down to consult the case with me. So I'm requesting, with all due respect, that you can help provide me with a new attorney.

The court denied appellant's request because he had not provided any information or factual basis to grant the request other than what appellant wanted. Appellant continued to ask for a new attorney, and the court responded that the request had been denied. Appellant then

2

stated he needed "to file for a new judge," at which point the court excused appellant and the hearing concluded.

Prior to jury selection on July 15, the court met with the parties in chambers. The court acknowledged having received letters from appellant that were forwarded to his attorney. Noting that it heard appellant had been disruptive in jail, the court told appellant that it was in his best interest to be on his best behavior in the courtroom because the jury may get the wrong impression if he is disruptive.

After the first State witness testified, appellant attempted to speak. The court informed him that if he had something to say he needed to speak to his counsel. Appellant responded that he did but that his counsel "just rejected it[.]" The court said that it was his counsel's job to decide which suggestions to follow, and appellant responded that "[h]e's supposed to represent me, though." Appellant continued to speak, attempting to inform the court about facts of the case that his counsel was not including. The court tried to explain to appellant that he was represented by counsel, but appellant continued to interrupt. As a result, the court ordered the bailiff to remove the jury. Appellant proceeded to tell the court that he did not want his lawyer and was not getting a fair trial. Again, appellant continued to interrupt when the court tried to explain the process of being represented by counsel. The following colloquy took place:

> THE COURT: Mr. Roberson, I'm required to maintain order in this proceeding. You are interrupting --
>
> DEFENDANT: I'm not getting a fair trial.
>
> THE COURT: You are interrupting it. If you cannot control yourself and stop your outburst, I will have to either put a gag on you -- and I don't want to do that -- or I will have to --

3

DEFENDANT: You may because I don't want him to represent me.

THE COURT: -- or I will have to exclude you from the courtroom.

DEFENDANT: Y'all got sh★★ y'all trying to cover up. Tell them about the hologram that y'all --

THE COURT: Mr. Roberson --

DEFENDANT: This is a civil matter now. It's dealing with --

THE COURT: Okay. I'm going to exclude you from the courtroom.

DEFENDANT: This is my life.

THE COURT: Take him out of the courtroom. Take him to jail. If he tells you he will act right, we'll let him back in.

DEFENDANT: Y'all ain't fixing to sell me. It's my motherf★★★ing life. I'm going to fight for it. I don't care who don't like it.

THE COURT: We'll have a trial without you.

DEFENDANT: Trying to sell me out. I got concrete evidence.

(Whereupon, the Defendant was escorted out of the courtroom and the following was had, to wit:)

DEFENSE COUNSEL: Your Honor, for the record --

THE COURT: Okay. Counsel, it became apparent to me that Mr. Roberson would not comply with the Court's directives to withhold his comments on this case. Now, he can't take advantage of both the public defender's office, which was appointed to represent him, and represent himself. That's a hybrid form that is not recognized. Now, because of his disruptive actions and comments, I had him excluded. Now, he's welcome to come back if he will promise to refrain from those actions that I've just observed and that have been recorded on the record. He wouldn't even listen to me enough to, I think, let me explain that to him. Now, Mr. Leonard, you're welcome to talk to him about that, and I'll give you a little recess to do that if you want

4

it. That's just about all I want to say about it. Do y'all have anything you want to say for the record?

DEFENSE COUNSEL: I will reserve that until I've had the opportunity to visit with him if that's okay, Judge.

THE COURT: Okay. Very well. I'll excuse you for ten minutes.

Appellant returned to the courtroom, apologized for losing his temper, and promised not to interrupt the proceedings. The court explained the trial process and representation by counsel, and appellant again voiced his dissatisfaction with his counsel. The court stated:

Now, we're either going to go with your trial with you here acting right -- And if you can't do that, if you can't maintain your order, I'll exclude you and we'll have a trial without you being here. I would prefer you being here. It's your right. But you can forfeit that right by your actions. Okay?

Appellant agreed, and the jury returned to the courtroom. The State continued with its case until the lunch recess. After the jury left, the court asked if there was anything that needed to be addressed before the break. Appellant asked the court where certain evidence was in regard to the case, and the court responded, "[I]t's not my duty or responsibility to answer those questions. It's the State's burden to prove the case. And if your counsel doesn't think that it's done, then I'll deal with it later." Appellant responded that he did not want his counsel to represent him, and the following colloquy ensued:

THE COURT: He is representing you.

DEFENDANT: That's what the whole purpose of it was the first time for me going off. He is not supposed to be representing me.

THE COURT: He is --

DEFENDANT: I can represent myself.

THE COURT: He is representing --

5

DEFENDANT: I have that right.

THE COURT: He is representing you until I relieve him. Now, do you want to represent yourself?

DEFENDANT: Yes. I been told you that I want to represent—

THE COURT: Now, you have never said that.

DEFENDANT: I have said that.

THE COURT: No.

DEFENDANT: I have said that I wanted to represent myself before I even came back over here. Y'all don't even have pictures of the second accident. You have pictures of the first one, but you don't have pictures of the second? That's a conflict right there.

THE COURT: Mr. Roberson, do you want to represent yourself?

DEFENDANT: Yes. I do want to represent myself for the third time.

THE COURT: Okay. Have you ever represented yourself before?

DEFENDANT: Never.

THE COURT: Do you know anything about how to conduct yourself?

DEFENDANT: Yes, sir.

THE COURT: Okay. What do you know about that?

DEFENDANT: I'm conducting myself in a professional manner, as well, but you not listening to me.

THE COURT: Well--

DEFENDANT: It's your job to judge. You're not doing -- You're not doing a proper judging.

THE COURT: Mr. Roberson, I'm not going to argue with you and I'm not going to let you sit here and argue and make statements about this Court. I'll hold you in contempt. Now, if you want to represent yourself, there's some dangers involved in that. You

6

could make some mistakes that would cost you later on down the line.

DEFENDANT: Well, if I make those mistakes, that's on me. That's not -- You don't have to deal with it. But I'm letting you know, this is not a fair trial. You don't even have evidence of the second accident. You got pictures of the first one, but you don't have evidence of the second one? That's something wrong there. Not only that, she lied about the side of her car being hit. She said the right side. The left of her car, the left side of her driver's side is damaged; not the passenger side. Come on, man. She lied under oath.

THE COURT: [Prosecutor], have you got anything to say about his request?

PROSECUTOR: No, Your Honor.

DEFENDANT: The diagram states right here towards Atwoods, the first car wreck is Atwoods going south (Indicating). If I'm going south of her and I'm on her passenger side, the passenger side of her car should be damaged; not the driver's side.

THE COURT: Okay. Mr. --

DEFENDANT: Right here, the picture shows the driver's side is clearly damaged (Indicating).

THE COURT: Mr. Roberson, this is argument. It's not anything else. Now--

DEFENDANT: He rejects all of my statements. He's not getting my point across. Not only that, everybody is not here. Everybody is not present in this trial. It's not just.

THE COURT: Well, I don't think it's a very wise decision, but if that's what you want to do, I guess I'll let you do it.

DEFENDANT: Yeah.

THE COURT: You sure?

DEFENDANT: I'm ready to go to trial, a real trial. This is a State's trial. They don't even have all of the witnesses and victims here. They don't even have evidence of the second car wreck.

7

THE COURT:     Mr. Roberson, I'll let you think about it over the noon hour. If that's what your final decision is --

DEFENDANT:     I'm going to represent myself. Mr. Leonard is no longer --

THE COURT:     Well, I'm going to appoint Mr. Leonard to be standby counsel because you may get in deep water that you can't swim in.

DEFENDANT:     No, I won't.

THE COURT:     So that's the decision of the Court.

DEFENDANT:     No, I won't.

THE COURT:     Mr. Leonard is not excused. He will stay as standby counsel. Court will be in recess until ten till 1:00.

After the break, the court recounted that before lunch, appellant had requested to represent himself, and appellant interrupted, which led to the following exchange:

DEFENDANT:     I made a request far before that.

THE COURT:     Mr. Roberson, you did not. You had requested –

DEFENDANT:     I had requested –

THE COURT:     No, you didn't.

DEFENDANT:     I did, sir.

THE COURT:     You're going to get excluded from –

DEFENDANT:     I made the request before I came back over here. I've got a--

THE COURT:     Okay. The Court finds that Mr. Roberson will not conduct himself in an orderly manner. He will be excluded from this proceeding. Mr. Leonard will represent him.

Appellant struggled with the bailiff and said he would not put his hands behind his back. Appellant began to cuss at the bailiffs and called one person a "weak ass motherf*****." The court told appellant to inform the bailiff if he decided to conduct

8

himself properly, and the court instructed the bailiff that appellant would not be allowed back until he apologizes and says he can conduct himself correctly. The court noted that appellant previously stated that he could conduct himself properly but continued to be disruptive. The court specifically found that appellant "did not intelligently and voluntarily and knowingly waive his right to counsel" and he would "interfere" with the explanation of the benefits and disadvantages of waiving his right to counsel. Ultimately, the court told the bailiff to just remove appellant and to let the court know if appellant advises the jail personnel that he will conduct himself appropriately. Appellant's counsel moved for a mistrial arguing that although the jury was not present, appellant was so loud that the jury could have heard him and previously had seen his actions. In denying the motion, the court stated that the complained-of occurrences were done by appellant in what the court believed to be an attempt to disrupt the proceedings, delay the trial, and not have the trial occur.

The jury returned and the trial proceeded. After motions for directed verdict, the court recessed to give appellant's counsel the opportunity to speak with him at the jail. When counsel returned, he informed the court that appellant was combative and did not want to speak with him, had changed out of his court clothes and into his orange jail clothes, and was still upset, saying that his counsel took away his right to represent himself and the right to cross-examine his accusers. Counsel stated that appellant was not "coming anywhere for me" and did not act as though he was going to behave for court. Counsel moved for a mistrial on the ground that appellant was denied the right to represent himself. The court responded that it was prepared to go into details with appellant after lunch concerning the right to represent himself, but he got so "belligerent" when the court attempted to do so

that it was not able to get to that stage. The court explained that it excused appellant because it was obvious that appellant was not going to let the trial proceed in an orderly fashion and that it was the court's duty to maintain order. The court further stated that appellant had been given the opportunity to come back to testify and to participate in the proceedings if he would promise to do so in an orderly manner, but he had not made a request.

Appellant was acquitted of all three aggravated-assault charges but was convicted of second-degree criminal mischief (D felony), failure to stop after accident with death or injury (D felony), and DWI (misdemeanor). He was sentenced as a habitual offender to serve twelve years' imprisonment for each of the felonies to run consecutively and one year at the county jail for misdemeanor DWI to run concurrently. Appellant timely appealed.

Appellant first argues that the circuit court violated his constitutional right to represent himself. We disagree.

A defendant has a constitutional right to self-representation under the Sixth Amendment to the United States Constitution and article 2, section 10 of the Arkansas Constitution. *Faretta v. California*, 422 U.S. 806 (1975); *Talley v. State*, 2017 Ark. App. 550, at 3, 533 S.W.3d 95, 98. A defendant may defend himself provided that (1) the request to waive the right to counsel is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver; and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Gardner v. State*, 2020 Ark. 147, at 3, 598 S.W.3d 10, 13, *cert. denied*, 141 S. Ct. 1082 (2021). All three factors must be satisfied in order to proceed pro se. *See Jarrett v. State*, 371 Ark. 100, 104, 263 S.W.3d 538, 542 (2007). Every reasonable presumption must be indulged against the waiver of a fundamental constitutional

right. *Gardner, supra* (citing *Hatfield v. State*, 346 Ark. 319, 57 S.W.3d 696 (2001)). The erroneous denial of the right to self-representation is not subject to a harmless-error review. *Mayo v. State*, 336 Ark. 275, 283, 984 S.W.2d 801, 806 (1999).

Here, appellant unequivocally asserted his desire to represent himself prior to the lunch break. When the court came back on the record and noted that appellant had made the request before lunch to represent himself, appellant proceeded to interrupt, stating that he had made the request "far before that." The court disagreed, and appellant continued to argue with the court on this point until the court ordered that he be removed. Appellant then refused to cooperate and made disparaging remarks when the bailiff attempted to remove him. Although appellant indicated his desire to represent himself, his own behavior caused him to be removed before the court was able to inquire whether appellant was knowingly and intelligently waiving his right to be represented by counsel. He was arguing with the court about when he first asserted the right. Although in his brief appellant attempts to isolate the colloquy that occurred after the lunch break as the sole episode of disruption in this case, the record reflects that his disruptive actions at trial began after the State's first witness had testified. This led to appellant's being removed at that time. After he returned, appellant apologized but then continued to be disruptive before the lunch break and continued his behavior after the break until he was removed a second time.

Whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, experience, and conduct of the accused. *Jarrett*, 371 Ark. at 104, 263 S.W.3d at 541.  The circuit court must establish on the record that the defendant is making a knowing and intelligent waiver of his

right to counsel by engaging in a colloquy with the defendant that is sufficient to show that the defendant is aware of his right to counsel and is aware of the danger in representing himself. *Talley v. State*, 2017 Ark. App. 550, at 11, 533 S.W.3d at 102 (citing *Pierce v. State*, 362 Ark. 491, 209 S.W.3d 364 (2005); *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999)).

Due to appellant's behavior, the circuit court was never able to conduct the proper inquiry as to whether appellant made a knowing and intelligent waiver of his right to counsel. The circuit court indicated that it was prepared to go into the details of self–representation with appellant after the lunch break concerning his knowing and intelligent waiver of counsel but was unable to get to that stage because appellant became "belligerent." The court elaborated that it was obvious that appellant was not going to allow the trial to proceed in an orderly fashion. Not only did appellant not make a knowing and intelligent waiver of his right to counsel, but also appellant engaged in conduct that would prevent the fair and orderly exposition of the issues. In light of the record in this case, we cannot say that the circuit court violated appellant's constitutional right to represent himself.

Appellant next contends that the circuit court violated his constitutional right to be present and to confrontation. Once again, appellant cites only to the colloquy after the lunch break when the circuit court indicated that just before the lunch break appellant made the request to represent himself. At this point, appellant interrupted and argued with the court that he had made the request "far before" that point. The interruption and argument went back and forth until the court excluded appellant because he would not conduct himself in an orderly manner. Appellant contends that the conduct that led to his exclusion was

"slightly rude at most" and in no way justifies his exclusion from his trial and nullification of his right to confrontation. He states that it was, at most, "an argumentative approach to self-representation in the face of the trial court misinterpreting the facts."

The issue of "whether an accused can claim the benefit of this constitutional right to remain in the courtroom while at the same time he engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial" was addressed by the Supreme Court in *Illinois v. Allen*, 397 U.S. 337, 338 (1970). The Court concluded that a defendant can lose his right to be present at trial if, after being warned that he will be removed from the courtroom, he nevertheless conducts himself in such a manner that his trial cannot proceed. The Court further held that the right to be present at trial could be reclaimed as soon as the defendant is willing to conduct himself in a manner that is consistent "with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id*. at 343. The Court stated:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

*Id*. at 343–44.

Our supreme court addressed such an argument in *Terry v. State*, 303 Ark. 270, 272, 796 S.W.2d 332, 334 (1990). Terry walked into the spectator area and refused to sit down

13

at the table after being asked by the circuit court six times at the outset of his jury trial. It took six officers several minutes to handcuff Terry, who was taken to a jail cell. The judge, attorneys, and court reporter went to the cell at which point Terry was informed that he could return at any time as long as he behaved but that the trial would proceed without him. Terry did not return until after voir dire. On appeal, the supreme court held that Terry's right to confrontation was not violated because he became disruptive and ignored the court's warning to return to his seat, noting that although Terry was not warned, the circuit court immediately suspended the proceedings and tried to convince him to return, warned that the trial would proceed with or without him, and informed him he could return at any time as long as he behaved. The court held that Terry "clearly relinquished his right to be present because of his own actions," noting that he "subsequently reclaimed the right by conducting himself in a manner consistent with the decorum that is essential in judicial proceedings." *Terry*, 303 Ark. at 272, 796 S.W.2d at 335.

While looking at what occurred after the lunch break in isolation may not demonstrate appellant's disorderly conduct, the entire record indicates that appellant's disruptive behavior started earlier in the day and continued despite appellant's having been warned and once removed from the courtroom. Our supreme court has acknowledged that the circuit court's knowledge of a defendant's past behavior is a relevant consideration in its exercise of discretion under *Illinois v. Allen*. *See Goston v. State*, 327 Ark. 486, 491, 939 S.W.2d 818, 820 (1997). Although the supreme court held that the circuit court had abused its discretion in excluding Goston, the facts in that case are distinguishable. There, it was noted that Goston was never afforded any opportunity to reclaim his right of confrontation,

14

the court based its ruling on prior incidents that had occurred within the past sixty days, and the court did not give Goston any chance to conduct himself properly.

In contrast, appellant's disruptive behavior occurred early and often on the day of trial. He had been warned to be on his best behavior in chambers prior to trial. His disruptive behavior began after the State's first witness had testified, which required the court to excuse the jury. Appellant continued to interrupt and argue with the court, and the court warned him that the trial would proceed with or without him. Ultimately, appellant was escorted from the courtroom. The court allowed a short recess for appellant's counsel to speak with him. Appellant returned, apologized for losing his temper, and promised not to interrupt the proceedings, but he immediately began to complain about his lawyer. The court again warned appellant that the trial would proceed without him if he could not control himself, stating that he could forfeit his right to be present by his actions. Appellant agreed, the jury returned, and the trial proceeded until the lunch break.

After the jury had been excused for lunch, appellant continued to question the evidence, complained about his lawyer, and indicated he wanted to represent himself. When the court began asking appellant whether he had represented himself or whether he knew how to conduct himself, appellant said he was conducting himself in a professional manner but that the court was not listening to him and stated that the court was not "doing a proper judging." The court told appellant it was not going to let appellant argue or make statements about the court but that if he wanted to represent himself, he had to know of the dangers and possible mistakes that could hurt him later on. Appellant went back and forth with the court arguing the evidence, and the court finally stated that it did not think it was wise of

appellant to represent himself but that appellant could think about it over the lunch hour. Appellant interrupted and said that he was representing himself and his counsel was no longer needed. The court stated that his counsel would be appointed as stand-by counsel.

After the lunch recess, the court began by stating that appellant had requested to represent himself before the lunch break. Appellant immediately interrupted and began to argue that he had asked long before that time. The court then found that appellant would not conduct himself in an orderly manner and excluded him from the trial. However, the court told appellant he could return if he decided to conduct himself properly, explaining that he could tell the bailiff if he decided to do so. The bailiff was also ordered to inform the court if appellant decided to cooperate. The court indicated that they had been down this road before but that appellant continued to be disruptive. When counsel went to visit with appellant to determine if he would testify, appellant had changed out of his court clothes and into his orange jail uniform, was still upset, was not going anywhere for counsel, and did not act like he was going to behave.

Under the circumstances in this case, we cannot say that the circuit court abused its discretion in excluding appellant from the trial. Appellant relinquished the right to be present because of his own actions, and his right to confrontation was not violated.

Affirmed.

BARRETT and WHITEAKER, JJ., agree.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.