Cite as 2025 Ark. App. 461

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-25-131

| | |
|---|---|
| MICHAEL MATTINGLY<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered October 1, 2025<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17CR-23-433]<br><br>HONORABLE RANDY WRIGHT, JUDGE<br><br>REVERSED AND REMANDED |

**CINDY GRACE THYER, Judge**

Michael Mattingly was convicted by a Crawford County jury of one count each of simultaneous possession of drugs and firearms, possession of morphine, and resisting arrest. His sole argument on appeal is that the trial court erred by failing to conduct the proper inquiry before allowing him to represent himself at trial. The State concedes error on this point, and we agree. We therefore reverse and remand for a new trial.

Because Mattingly does not challenge the sufficiency of the evidence supporting his convictions, we recite the facts only briefly. Deputy Cody Giles of the Crawford County Sheriff's Department pulled Mattingly over for a traffic violation on July 2, 2023. After getting out of his vehicle, Mattingly began yelling at Giles and was uncooperative to the point that Giles had to deploy his taser. Giles, along with another officer who arrived on the scene to assist, eventually got Mattingly into the back of the police vehicle, where Mattingly cursed

at the officers and accused them of setting him up. When Mattingly was processed at the jail, officers discovered a firearm and a tin foil ball containing a number of white pills in a fanny pack. The pills were subsequently tested at the crime lab and determined to be morphine. As a result, Mattingly was charged with simultaneous possession of drugs and a firearm; possession of a controlled substance; furnishing, possessing, or using prohibited articles; resisting arrest; obstructing governmental operations; and having defective taillights.

A public defender was initially appointed to represent Mattingly. On September 1, 2023, counsel filed a motion for mental evaluation stating a belief that Mattingly was unable to effectively assist counsel in preparing his defense and did not understand the proceedings against him. At a September 5 hearing, counsel indicated to the court that Mattingly did not believe the court had jurisdiction to hear his case. In response, Mattingly said that he wanted "to find out what law that you're prosecuting me in." The same day, Mattingly filed a nineteen-page pro se motion to dismiss and an affidavit of reservation of rights under "UCC 1-308/1-207" asserting his "status" as a sovereign citizen. The circuit court entered an order on September 6 directing Mattingly to undergo a forensic mental evaluation.[1]

---

[1]Mattingly did not appear for his first court-ordered forensic evaluation in December 2023. In January 2024, a second forensic evaluator informed the court that he was unable to conduct the examination because Mattingly insisted on tape recording it, which was not allowed. A third examiner was finally able to perform a forensic evaluation in August 2024; it was determined that Mattingly had the capacity to understand the proceedings against him and had the capacity to assist effectively in his own defense.

Beginning on September 13, Mattingly filed a series of pro se motions to dismiss challenging the court's jurisdiction. On December 20, Mattingly specifically sought the dismissal of his public defender.

Over the following months, three circuit court judges recused themselves from the case. On February 20, 2024, the supreme court appointed retired circuit court judge Randy Wright to preside over the case. Judge Wright convened a pretrial hearing on March 19, 2024, at which the parties discussed Mattingly's motion to dismiss his public defender:

COURT: All right, Mr. Mattingly, a few issues we need to take up this morning in this matter. I'm unclear. I think from the pleadings that you've wished to dismiss your public defender; is that correct?

MATTINGLY: Yes.

COURT: You're going to represent yourself?

MATTINGLY: Yep.

COURT: Yes; is that correct?

MATTINGLY: Yes, sir.

COURT: All right, so based upon that, the Public Defender's Office will be dismissed from further representation of you.

MATTINGLY: Okay.

COURT: And you will be representing yourself in this matter, all right?

MATTINGLY: Yep.

The court entered an order the following day that provided as follows:

On the motion of Michael Mattingly and ruling by the Court, good cause having been shown, to wit: Mr. Mattingly wishes to represent himself, attorney Arron

3

Edwards is relieved as attorney for the defendant and the defendant will continue representation Pro Se. All discovery related to this case, in the possession of Mrs. Edwards, has been tendered to the Defendant.

A second pretrial hearing was convened on September 12, 2024, at which Mattingly appeared pro se. After the court observed that Mattingly had been found competent to proceed, the following colloquy ensued:

COURT: [A]t this time, Mr. Mattingly, you've chosen prior--in prior proceedings to be represented by yourself, is that correct?

MATTINGLY: Yes.

COURT: And you wish to do that?

MATTINGLY: Yes, right now, I question jurisdiction, territory. I want subject matter and personal jurisdiction.

COURT: And sir, you have the jurisdiction of the State of Arkansas.

MATTINGLY: You have to prove it to the Court according to this.

COURT: Well, you have the right to question that, the Court will note that, and moving forward, certainly, you'll have the right to appeal should you choose to appeal whatever verdict is rendered, present that to the Arkansas Supreme Court.

MATTINGLY: It says you can't go forward like the mental eval. The Court can't go forward until you prove jurisdiction.

COURT: Well, that's not correct. So I'll deny that.

MATTINGLY: Yes, well--

COURT: I'll--

MATTINGLY: Of course you're going to say that I got it off the computer.

COURT: I'll deny your assertion that--

4

MATTINGLY: And I don't understand the charges either.

COURT: Okay, then I'll ask you at this time. Do you wish to represent yourself or would you like for the Court to appoint you an attorney?

MATTINGLY: No, I will represent myself.

COURT: All right, okay.

A lengthy and spirited exchange between the court and Mattingly ensued wherein Mattingly demanded that the court prove its jurisdiction over him and objected to the charges brought against him. The court ultimately confirmed that Mattingly understood the charges against him and advised him of the date of his upcoming jury trial.

Mattingly's trial began on the morning of October 28, 2024. Before commencing voir dire, the court inquired if Mattingly still wished to proceed pro se:

COURT: Now, Mr. Mattingly, we've talked the last time we were together, and you advised that you did not wish to have an attorney represent you, is that correct?

MATTINGLY: Well, yeah, because I--let me get one thing straight, we're--you're running, or you're accusing me of--

COURT: I'm not accusing you of anything.

MATTINGLY: Okay. The prosecution is. Under statutory law, right? Well--

COURT: Under the law in Arkansas, yes, sir.

MATTINGLY: There's common law. You have common law rights. So you're saying I don't get them here?

COURT: You have--you have rights as determined by the State of Arkansas.

MATTINGLY: Well, how is that freedom or liberty?

COURT:      If you don't--I know you don't like it, but that's the rules.

MATTINGLY:  Well, he asked me for a pleas, so now--I'm thinking now, because if you're telling me there's no such thing as common law rights then I guess I'll have to--

COURT:      I just don't understand your question. So I'm going to advise you of the law on the matter, and I'm going to advise you what you've been charged with, okay?

MATTINGLY:  Okay.

At this juncture, the State informed the court that it was going to proceed with only three charges: simultaneous possession of drugs and a firearm, possession of a controlled substance, and resisting arrest. After a brief recess during which the State and Mattingly discussed a possible plea bargain, the court asked whether the parties were ready to proceed. The State said that it was. The court then inquired as follows:

COURT:      Mr. Mattingly, you understand that we're about ready to select a jury in this matter, and during the time that we'll be selecting a jury, there will be questions asked of the jury by the Court and then the prosecutor and then you'll have an opportunity to ask questions of the jury as to their qualifications, sir, okay? And so are you ready to proceed, Mr. Mattingly?

MATTINGLY:  I would like to ask for more time, but I know it ain't going to happen.

COURT:      I'm sorry, are you asking for what?

MATTINGLY:  More time.

COURT:      On what basis, sir?

MATTINGLY:  Just I'm not really prepared, and I prepared all my stuff on common law or the constitution, and he says it's no good in here.

6

COURT:     Well, now, I--the law is as I've read it to you about the case, and Arkansas law incorporates common law and that's part of our statutory system, and that's the way we'll proceed, sir.

The court then advised that voir dire would begin next and informed Mattingly that he would have the opportunity to strike jurors and that he could ask questions of the court about procedures if he was not clear on how to do things. Mattingly ultimately asked no questions of the venire pool and did not exercise any strikes. The case proceeded to trial, and as noted above, the jury found Mattingly guilty of simultaneous possession of drugs and firearms, possession of morphine, and resisting arrest. He was sentenced to twenty-three years for the simultaneous-possession conviction, three years and a $1000 fine for possession of a controlled substance, and one year in the county jail and a $2500 fine for resisting arrest. The sentencing order reflecting Mattingly's convictions and sentences was entered on November 20, 2024, and he filed a timely notice of appeal on December 3.

On appeal, Mattingly's sole argument is that the circuit court failed to determine whether he unequivocally, knowingly, and intelligently waived his right to counsel. In determining whether a defendant knowingly and intelligently waived his constitutional right to counsel, our standard of review is whether the circuit court's finding was clearly against the preponderance of the evidence. *Trulock v. State*, 2021 Ark. App. 45, 616 S.W.3d 691.

The Sixth Amendment to the United States Constitution, made obligatory upon the states by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Brown v. State*, 2012 Ark. App. 314, 416 S.W.3d 260. The constitutional right to counsel, however, is a personal right and may

7

be waived. *Id.* The right of a criminal defendant to proceed pro se was delineated in *Faretta v. California*, 422 U.S. 806 (1975), in which the Supreme Court held that "in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits [traditionally associated with the right to counsel]." *Id.* at 835.

There are three requirements that must be met before allowing a defendant to proceed pro se: (1) the request to waive the right to counsel must be unequivocal and timely asserted, (2) there must have been a knowing and intelligent waiver, and (3) the defendant must not have engaged in conduct that would prevent the fair and orderly exposition of the issues. *Brown*, *supra*. The circuit court bears a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *Ivory v. State*, 2017 Ark. App. 269, 520 S.W.3d 729. The accused must have full knowledge or adequate warning concerning his rights and a clear intent to relinquish them before a waiver can be found. *Id.* Whether any defendant intelligently waived his right to counsel is dependent on the particular facts and circumstances of the case, including the background, the experience, and the conduct of the accused. *Id.* Significantly, every reasonable presumption must be indulged against the waiver of the fundamental constitutional right to counsel. *Id.*

To establish a voluntary and intelligent waiver, the circuit court must inform the accused that he is entitled to an attorney as a matter of law and question him to determine whether he can afford to hire a lawyer. *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999). The circuit court must also explain the desirability of having the assistance of an attorney during the trial and the drawbacks of not having an attorney. *Id.* A specific warning of the

dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. *Id.* The "constitutional minimum" for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel. *Hatfield v. State*, 346 Ark. 319, 326, 57 S.W.3d 696, 701 (2001) (citing *Scott v. State*, 298 Ark. 214, 766 S.W.2d 428 (1989)).

We set out the colloquies between the court and Mattingly above in order to show that while the circuit court engaged Mattingly on matters of jurisdiction and procedure, it clearly failed to undertake any of the requisite inquiries, warnings, or explanations before allowing Mattingly to represent himself. The court simply asked Mattingly if he wished to represent himself, to which Mattingly replied in the affirmative. The court did not inquire about Mattingly's educational background or whether he had any previous experience participating in a legal proceeding. *See Hull v. State*, 2021 Ark. App. 102, 618 S.W.3d 450. The court did not warn Mattingly that he would have to comply with the rules of evidence and criminal procedure and did not explain the consequences of failing to follow these rules. *See Williams v. State*, 2009 Ark. App. 684, 372 S.W.3d 358. In short, there was simply no discussion of the substantive risks of proceeding without counsel. *See Bledsoe, supra.*

A violation of the Sixth Amendment right to self-representation is a fundamental, structural error that is not amenable to a harmless-error analysis. See *Ciesielski v. State*, 2014 Ark. App. 329 (citing *McKaskle v. Wiggins*, 465 U.S. 168 (1984)). We therefore hold that

Mattingly's waiver of his right to counsel was not knowing and intelligent, and we reverse and remand for a new trial.[2]

Reversed and remanded.

ABRAMSON and HIXSON, JJ., agree.

*Dusti Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

---

[2]Mattingly briefly argues that the circuit court also erred in failing to offer him the assistance of standby counsel. It is true that the assistance of standby counsel can rise to a level that the defendant is deemed to have had counsel for his defense, thereby mooting any assertion of involuntary waiver of the right to counsel. *See Hatfield*, 346 Ark. 319, 57 S.W.3d 696. The court, however, is not required to offer a defendant the benefit of standby counsel, although it may do so if it determines that it is necessary. *Barnes v. State*, 15 Ark. App. 153, 691 S.W.2d 178 (1985).